Hillsborough
No. 85-153

# THE STATE OF NEW HAMPSHIRE

v.

# WILLIAM GODING

July 9, 1986

268.

*Stephen E. Merrill*, attorney general (*Andrew L. Isaac*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

BATCHELDER, J. In this appeal the defendant contests his conviction in Superior Court (*Pappagianis*, J.) for driving while intoxicated (DWI)-second offense, RSA 265:82. He argues that (1) the State was constitutionally barred from charging him with DWI-second offense prior to a trial *de novo* in superior court, after he was

tried and convicted of DWI-first offense in district court; (2) his post-arrest admissions, uttered in response to implied consent law questioning, *see* RSA 265:84 *et seq.* (1982 and Supp. 1985), should have been suppressed because *Miranda* warnings had not yet been given; and (3) we should adopt a rule that once a defendant is in custody, implied consent law questioning must be preceded by *Miranda* warnings. For the reasons that follow, we affirm.

On November 12, 1982, Greenfield Police Chief Charles Burrage signaled the driver of an erratically driven pick-up truck to pull over. As the chief approached the stopped vehicle, he noticed a strong alcoholic odor emanating from empty beer cans in the back of the truck. Two people were in the truck. When the chief asked the driver (the defendant) to step out of the vehicle, the defendant stepped out and steadied himself by leaning against the vehicle. According to the chief, the passenger appeared to be unconscious. The police chief asked the defendant about his erratic driving, and the defendant replied: "The only reason I'm driving is because I'm in a lot better shape than he is, so why don't you give me a break?"

The chief conducted four field sobriety tests to examine the defendant's reflexes, and thereafter arrested him. After imparting the implied consent law warnings to the defendant, the chief asked the defendant if he would take a breathalyzer test. The defendant responded: "I'll blow too high." The defendant was handcuffed and put in the back of the cruiser. En route to the police station, the chief asked the defendant if he would prefer to take a blood test at the hospital. The defendant acceded at first, but a few moments later he responded: "I'll take it next week."

The police chief read the *Miranda* warnings to the defendant at the station. As the defendant did not waive his right to remain silent, no interrogation ensued.

The defendant was charged with DWI-second offense and driving after revocation, RSA 263:64. Before his trial in district court, the State entered *nolle prosequi* on the DWI-second offense charge because the prosecutor did not have in his possession the necessary proof of the prior offense. Instead, the defendant was tried and convicted on DWI-first offense and driving after revocation charges. Thereafter, he exercised his right to a trial *de novo* in superior court. *See* RSA 592-A:2, 599:1. The State entered *nolle prosequi* on the two district court complaints, and brought two informations charging the defendant with DWI-second offense and driving without proof of financial responsibility, RSA 263:63.

At a May 1983 jury trial in Superior Court (*Contas*, J.), the defendant was convicted of driving without proof of financial responsibility. The jury was unable to reach a verdict on the DWI-second

offense charge, however, and a mistrial was declared. On appeal, this court reversed the driving without proof of financial responsibility conviction because the trial court refused to consider the defendant's proposed *voir dire* questions. *See State v. Goding,* 124 N.H. 781, 474 A.2d 580 (1984).

The defendant was retried in November 1983 in superior court and convicted of DWI-second offense. Prior to sentencing, this court was presented with an interlocutory transfer of the question whether the State must allege and prove a culpable mental state in misdemeanor DWI cases, and ruled that no such *mens rea* requirement existed. *State v. Goding,* 126 N.H. 50, 489 A.2d 579 (1985). The defendant then appealed his DWI-second offense conviction.

The first issue on appeal is whether the defendant's due process rights were violated when the State charged him with DWI-second offense before a trial *de novo* in the superior court, after he appealed his district court DWI-first offense conviction. Since the defendant relies solely on the Federal Constitution, we need not address the State Constitution. *State v. Reynolds,* 124 N.H. 428, 432, 471 A.2d 1172, 1173–74 (1984). *See State v. Ball,* 124 N.H. 226, 231–32, 471 A.2d 347, 350–51 (1984) (Federal Constitution provides minimum level of protection of fundamental rights).

■ We begin our analysis by addressing two procedural matters raised by the State. First, the State asserts that the defendant should be precluded from alleging a due process violation on appeal because trial counsel initially raised the issue of the heightened charge in terms of double jeopardy rather than due process. We disagree and hold that when the trial counsel challenged the propriety and fairness of the State's DWI-second offense charge, he effectively raised the due process issue at the first superior court trial.

The State also contends that since the defendant did not raise the due process issue at his second superior court trial, he failed to preserve the issue for appeal. At the first trial, the superior court denied pre-trial motions to suppress on *Miranda* grounds and to dismiss on due process grounds. At the retrial, the defendant stated that he was not waiving his *Miranda* objections from the first superior court trial, yet he did not specifically mention the due process issue.

■■ The State relies on *United States v. Mischlich,* 310 F. Supp. 669 (D.N.J. 1970), and *State v. Hale,* 127 N.J. Super. 407, 317 A.2d 731 (N.J. Sup. Ct. App. Div. 1974) in arguing that the earlier mistrial was a nugatory proceeding, and therefore the defendant's failure to raise and litigate his due process claim at the retrial was a waiver of that issue. We disagree. Although the trial court has the inherent

power to correct an earlier, erroneous trial court ruling, *see Croteau v. Harvey & Landers*, 99 N.H. 264, 267, 109 A.2d 553, 555 (1954), defense counsel was not obliged to test or relitigate the court's earlier rulings on pre-trial motions just because there was a retrial, or because a different judge was presiding at the retrial. The mistrial did not render null all that went before it. Hence, the superior court's pre-trial determinations and the objections and exceptions thereto survived the mistrial, and remained effective.

We now address the due process claim. The defendant argues that in a two-tiered court system, the State is constitutionally prohibited from increasing the charges against a defendant in superior court after that defendant has been tried and convicted of a lesser charge in district court. In effect, he argues that the right of defendants to appeal a lower tier conviction and obtain a trial *de novo* will be chilled if a defendant runs the risk of having to defend against a more severe charge at a *de novo* trial.

 Due process requires that any increased sentence or charge imposed on retrial not be the result of judicial or prosecutorial vindictiveness. When a defendant receives a more severe sentence from the same sentencing judge on retrial after appeal, judicial vindictiveness is presumed unless the judge states the reasons for the increased sentence on the record, and those reasons are based on objective information concerning identifiable conduct on the part of the defendant occurring *after* the time of the original sentencing procedure. This would also include matters coming to the attention of the trial court during retrial. *See North Carolina v. Pearce*, 395 U.S. 711, 723, 726 (1969). Judicial vindictiveness is not presumed, however, when a defendant, originally sentenced by a jury, receives a harsher sentence from the same trial judge on retrial, where additional evidence was heard at the retrial concerning the defendant's direct participation in the crime, and the judge's stated rationale for the harsher sentence was logically related to the additional evidence. *See Texas v. McCullough*, 106 S. Ct. 976, 979–80 (1986) (upholding harsher sentence based on evidence of defendant's pretrial conduct). Moreover, judicial vindictiveness is not presumed when a defendant receives a harsher sentence after a trial *de novo* in a two-tiered court system, since the judge is different and both the defendant and the prosecutor begin with a clean slate. *See Colten v. Kentucky*, 407 U.S. 104 (1972).

 Prosecutorial vindictiveness, on the other hand, is presumed in a case such as this, where the defendant, who is faced with a harsher charge at a *de novo* trial, alleges a due process violation. *See Blackledge v. Perry*, 417 U.S. 21 (1974); *Thigpen v. Roberts*, 104 S. Ct.

2916 (1984). In *Blackledge,* the Court discussed the issue of prosecutorial vindictiveness and the institution of increased charges before a trial *de novo:*

> "A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals—by 'upping the ante' through a felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy—the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial.
>
> . . . A person convicted of an offense is entitled to pursue his statutory right to a trial *de novo,* without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration."

*Blackledge, supra* at 27–28. The Court held "that it was not constitutionally permissible for the State to respond to Perry's invocation of his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo.*" *Id.* at 28–29. The Court stated, however, that "the Due Process Clause is not offended by all possibilities of increased punishment . . ., but only by those that pose a realistic likelihood of 'vindictiveness.'" *Id.* at 27.

In *Thigpen,* the Court explained that *Blackledge* established a rebuttable presumption of unconstitutional vindictiveness when a prosecutor "upped the ante" in response to a defendant's exercise of his right to a trial *de novo. Thigpen,* 104 S. Ct. at 2918, 2920 n.6. The presumption "reflects 'institutional pressure that . . . might . . . subconsciously motivate a vindictive prosecutorial . . . response to a defendant's exercise of his right to obtain a retrial of a decided question.'" *Id.* at 2919 (quoting *United States v. Goodwin,* 457 U.S. 368, 377 (1982)). Accordingly, the State must prove that the increased charge is not the product of vindictiveness.

The facts of this case indicate that the heightened charge was not the result of prosecutorial vindictiveness. The State has successfully rebutted the presumption by establishing that (1) the defendant conceded that DWI-second offense was the original charge, (2) the defendant prepared for the district court trial based

on the more serious charge, (3) there was no evidence of prosecutorial statements indicating vindictiveness or a motive to chill the defendant's right to appeal, and (4) it was only a matter of fortuity that the defendant was not initially tried for DWI-second offense. We note, however, that absent such exceptional circumstances, the substitution of an increased charge against a defendant who has exercised his right to a trial *de novo* would violate the federal due process clause.

 The second issue raised on appeal is whether the defendant's post-arrest, pre-*Miranda* admissions, spoken in response to implied consent law questioning, should have been suppressed. Once again, the State argues that the defendant has waived the issue. We disagree. As we stated earlier, the defendant had no duty to litigate the issue at his second superior court trial. Moreover, he has not, as the State asserts, failed to appeal at the proper time. The defendant's first superior court trial ended in a mistrial. Since there was no final disposition of the DWI charge, he was under no obligation to appeal the *Miranda* issue at that time. In addition, he was not obligated to attempt to raise the issue in the interlocutory transfer, which the State mischaracterizes as an "appeal." Thus, the issue is properly before the court.

The defendant concedes that the Federal Constitution does not provide a basis for suppression of his statements, *see South Dakota v. Neville*, 459 U.S. 553, 564 (1983), but urges us to adopt a rule under part I, article 15 of the State Constitution that once a defendant is in custody, police questioning concerning a blood alcohol test must be preceded by *Miranda* warnings. In addressing this issue, we refer to federal case law as an aid to interpreting the State Constitution. *See State v. Ball*, 124 N.H. 226, 471 A.2d 347 (1983).

In *State v. Cormier*, 127 N.H. 253, 499 A.2d 986 (1985), a majority of this court held that a suspect's refusal to take a blood alcohol test can be admitted as evidence against the suspect in a later DWI prosecution. In addition, the court stated that article 15's protection against compelled self-incrimination applies only to evidence provided by a defendant that is of a testimonial character. *Id.* at 255, 499 A.2d at 987–88. The defendant's explanations in this case were clearly testimonial, but whether they were compelled, or the product of "interrogation," is another matter.

The defendant argues that the blood alcohol test inquiry occurs in an inherently coercive setting and invites defendants to justify their refusal to take the test, and therefore is interrogation which must be preceded by *Miranda* warnings. We disagree. Many suspects, whether innocent or guilty, undoubtedly find the setting intimi-

dating; nonetheless, the inquiry does not pressure defendants to explain their refusal to take the test.

 Moreover, we agree with the United States Supreme Court that the absence of prior *Miranda* warnings does not taint the comments of a suspect in response to the routine questions normally attendant to an arrest. In *Neville supra*, the Court stated:

> "In the context of an arrest for driving while intoxicated, a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*. As we stated in *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980), police words or actions 'normally attendant to arrest and custody' do not constitute interrogation. The police inquiry here is highly regulated by State law, and is presented in virtually the same words to all suspects. It is similar to a police request to submit to fingerprinting or photography. Respondent's choice of refusal thus enjoys no prophylactic *Miranda* protection outside the basic Fifth Amendment protection."

459 U.S. at 564 n.15. Implied consent questioning is now routine in this State when an officer suspects that a driver is intoxicated. We therefore hold that *Miranda* warnings need not precede implied consent law questioning, and voluntary admissions, comments, or explanations spoken in response to implied consent law questioning are admissible as evidence in criminal trials.

 In this case, the defendant's response to the officer's question concerning the defendant's erratic driving reveals that he was in a talkative mood. The defendant does not argue, and the record does not indicate, that the police chief exceeded the bounds of the questioning necessary under the implied consent law (*e.g.*, by making unnecessary inquiries regarding the defendant's reasons for refusing to take the test); nor is there any indication of the use of subtle coercion to obtain an incriminating response. Thus, the trial court correctly viewed the defendant's "explanations" as voluntary. *See State v. White*, 105 N.H. 159, 162–63, 196 A.2d 33, 35 (1963), *cert. denied*, 379 U.S. 854 (1964) (voluntary confession).

The defendant argues that a rule requiring police officers to advise suspects of their *Miranda* rights prior to implied consent law questioning would give suspects fair notice that incriminating explanations would be admissible as evidence against them and provide a bright-line rule that would be easy for the police to follow.

This may be true, but such a rule is not mandated by the State Constitution. Accordingly, we affirm.

*Affirmed.*

SOUTER, J., dissented in part; the others concurred.

SOUTER, J., dissenting in part: I dissent from the portion of the opinion holding that the defendant adequately raised any due process issue distinct from a claim of double jeopardy under the theory of fourteenth amendment incorporation.