## Lynne Johnson vs. Philip O. Johnson.

No. 98-P-2227.

Barnstable. October 5, 2000. - December 19, 2001.

Present: Laurence, Dreben, & Gelinas, JJ.

*Divorce and Separation,* Division of property, Modification of judgment, Appeal.

There was no merit to the contention by the husband in a divorce proceeding that a postremand evidentiary hearing, in which the trial judge considered evidence of events occurring subsequent to the divorce, impermissibly exceeded the directive of a rescript from the Supreme Judicial Court, where the directive did not purport to frame a judgment with regard to a division of property that would be binding on the trial court, but required the trial court to consider anew the matter of the division of all assets and debts. [420]

In a divorce proceeding, in which the trial judge considered evidence of events occurring subsequent to the divorce during a postremand evidentiary hearing with respect to a division of the marital assets and debts, the judge properly followed the directive of the Supreme Judicial Court in conducting the hearing and in considering matters occurring subsequent to the divorce; further, the judge, in effect, considered factors under G. L. c. 208, § 34, as of the date of the divorce, rather than as of the date of the hearing after remand. [420-423]

There was no merit to the contention by the husband in a divorce proceeding that the trial judge abused his discretion in assigning virtually all the marital estate to the wife, including the marital home, which was acquired almost entirely as a gift from the husband's mother. [423]

Complaints for divorce filed in the Barnstable Division of the Probate and Family Court Department on February 24, 1994, and March 7, 1994, respectively.

Following review by the Supreme Judicial Court, 425 Mass. 693 (1997), further proceedings were had before *Robert E. Terry,* J.

*Stephen C. Maloney* for Philip O. Johnson.

*Thomas H. Souza* for Lynne Johnson.

GELINAS, J. Philip Johnson (husband) raises three issues on his appeal from a judgment in the Barnstable Probate and Family Court. He claims as error the following: (1) that a postremand evidentiary hearing, in which the trial judge considered evidence of events occurring subsequent to the divorce, impermissibly exceeded the directive of a rescript from the Supreme Judicial Court; (2) that, with respect to division of the marital assets and debts, the trial judge erroneously considered factors under G. L. c. 208, § 34, as of the date of the hearing after remand, rather than as of the date of the divorce; and (3) that the trial judge abused his discretion in assigning virtually one hundred per cent of the assets to the wife, especially where the principal asset, the marital home, was acquired almost entirely as a gift from Philip Johnson's mother. We affirm.

Philip Johnson and Lynne Johnson, husband and wife, were divorced by a judgment of the Barnstable Probate and Family Court dated May 2, 1995. Among other provisions, the judgment required conveyance of the jointly held marital home (Mashpee home) to a trust for the benefit of the couple's four children, with the husband to be solely responsible for the real estate taxes.[1] The judgment also awarded the contents of the marital home to the wife (except for certain enumerated items awarded to husband); permitted each of the parties to retain bank accounts standing in their respective names; allowed the wife to retain her 1988 Dodge Caravan minivan and the husband to retain his 1987 GMC Jimmy sport utility vehicle; permitted the husband to retain his sole interest in real estate in Plymouth (along with responsibility for the expenses thereof); required each party to be responsible for debts standing in their respective names as set forth in their financial statements; and ordered the husband to pay the wife $3,000 for attorney's fees.

The husband appealed that portion of the judgment placing the Mashpee home in trust and awarding $3,000 in attorney's fees. The husband simultaneously appealed a "clarification" issued by the trial judge, in response to the wife's complaint for contempt, filed in July of 1995, with respect to certain credit

---

[1]Three of the children are from the marriage and the fourth, the biological child of the wife, was adopted by the husband. The husband had six other children by other marriages.

card obligations. After ordering direct appellate review, the Supreme Judicial Court, in *Johnson* v. *Johnson*, 425 Mass. 693 (1997), ruled the disposition of the Mashpee home to be in error, as it resulted in property being transferred to "persons other than the husband or wife." *Id.* at 695. Recognizing that any reconsideration of the order concerning the Mashpee home might affect other portions of the judgment dividing marital assets and debt, the Supreme Judicial Court vacated the entire portion of the judgment concerning their division. The Supreme Judicial Court also declined to reach the issue whether the judgment had been improperly modified by the "clarification," "because our ruling . . . necessitates a reconsideration of the distribution of all the marital assets and debts." *Id.* at 693 n.1.

The decision and remand of the Supreme Judicial Court issued on August 4, 1997. On October 31, 1997, the same judge of the Barnstable Probate and Family Court who had decided the original matter filed a "Corrected Order of the Court." This order scheduled a hearing on the matter of the division of marital assets and debts for January 12, 1998. It further ordered the parties to file any complaints for modification forthwith, to be consolidated for trial on January 12; ordered the husband to reimburse the wife $1,100 for credit card payments that the wife had made during the prior three months; and ordered that each party contribute one-half of the credit card payments for the coming months of November and December. Thereafter the husband filed a motion to amend a complaint for modification he had filed on January 24, 1997 (relating to custody and visitation). The wife filed a complaint for contempt alleging the husband's failure to pay the credit card debt (this in addition to a pending complaint for contempt she filed in August of 1997, alleging failure to permit wage assignment, not paying property taxes, and not paying uninsured medical expenses incurred for the minor children). All matters came on for hearing on January 12, 1998. There was evidence that the value of the Mashpee home, fixed at $105,000 at the time of the divorce, had increased to $135,000. Prior to the hearing, the husband disposed of the Plymouth property at a "distress" sale, the price obtained being less than the mortgage owed on the property.

At the hearing, the judge received in evidence the transcript

of the 1995 hearing, together with his original findings and rulings. He also permitted evidence of various changes in the parties' circumstances occurring since the original judgment of divorce, as well as evidence of the parties' activities with respect to the Mashpee home and the Plymouth property both before and after the divorce. The judge's subsequent findings of fact, issued on January 23, 1998, incorporated by reference his original findings and ultimate conclusions, the latter set forth in a document styled "Rationale." He made additional findings, reflecting changes since the divorce: in health conditions (both parties' health conditions had deteriorated, wife's more than husband's); living circumstances (wife's circumstances had deteriorated; husband was supported by wealthy mother who provided him with cash and many items of value — he had expended $250,000 of his mother's money on motorcycles, a motor home and the purchase of and improvements to another home); amounts expended by wife, since the divorce, in improving the Mashpee home ($11,700 for an addition, a deck, landscaping repairs and maintenance); the husband's "distress" sale of the Plymouth property (on this score the trial judge concluded, on the basis of her contribution of $14,000 to the repair of the property during the marriage, that wife would have been entitled to a portion of the equity had there been any); and the needs of the children in the present circumstance. He found that the future needs of the children would best be met by awarding any equity to which the husband might be entitled in the Mashpee home to the wife to allow the children to have a stable home environment. He further found that the wife was entitled to the property based on contributions made to the upkeep and improvement of the Mashpee property "throughout the marriage and subsequent to the marriage." He specifically found that the increase in the property's value was "due to the plaintiff's efforts," notwithstanding the fact that the Mashpee home was acquired with a gift of money from the husband's mother. The trial court judgment ordered that the husband convey his interest in the Mashpee home to the wife, with the wife to be responsible for all real estate taxes, including any that were past due. The judgment further ordered that the husband and wife each be responsible for one-half of the joint

credit card debt then due ($26,000); that the wife retain sole title to the parties' timeshare unit in New Hampshire[2]; and that custodial interest in certain bonds held for their son Matthew be assigned to the wife. All other provisions of the May 2, 1995, judgment of divorce were to remain in effect.

The husband first contends that, under the terms of the Supreme Judicial Court's rescript, the trial judge had no right to hold an evidentiary hearing or to make further findings, and that he could not rely on any matters occurring after the judgment of divorce, or to consider the circumstances of the parties subsequent to that judgment. This argument is without merit.

The trial court is bound to enter a judgment after rescript in conformity with instructions in the rescript. *Wheatley* v. *Planning Bd. of Hingham*, 10 Mass. App. Ct. 884, 884 (1980). Here, the rescript of the Supreme Judicial Court did not purport to frame a judgment with regard to the division of property that would be binding on the trial court. The rescript was couched as a remand, and required the trial court to consider anew the matter of the division of all of the marital assets and debts. The remand made no attempt to dictate the procedure by which the trial court should reconsider the division. The Supreme Judicial Court vacated the judgment with respect to the division of marital assets and debts. This resulted in the case standing as if no judgment had been entered with respect to the division. See *Lee* v. *Fowler*, 263 Mass. 440, 444 (1928); *Brown* v. *Massachusetts Port Authy.*, 371 Mass. 395, 400 (1976). When the matter returned to the Barnstable Probate and Family Court, it was akin to many divorce cases, where the judgment of divorce enters, but division of assets and debts is deferred to a separate proceeding, after the divorce becomes final.

The Probate Court may assign property pursuant to G. L.

---

[2]The record reflects that the timeshare unit was owned jointly by the parties at the time of the divorce, and at that time, the trial judge found that the unit had "little or no value to it." The original division of marital property omitted the unit. The trial judge was correct in including its disposition in the later decree, where he awarded the unit to the wife. We are not concerned that the award might disturb the division of the marital property; in a financial statement submitted to the court prior to the hearing in 1998, the husband listed the unit and declared that it had no value.

c. 208, § 34,[3] after the judgment of divorce has become absolute. *Cappello* v. *Cappello*, 23 Mass. App. Ct. 941, 942 (1986). See *Davidson* v. *Davidson*, 19 Mass. App. Ct. 364, 367 (1985). Upon remand, the trial judge was thus required to consider application of the § 34 factors. He was further required to determine the appropriate date for valuing the assets and debts, and, if there was appreciation or depreciation, to consider what factors influenced either. Where the division of property takes place after the divorce has become final, the trial judge should apply the factors set forth in G. L. c. 208, § 34, as of the time of the divorce. See *Davidson* v. *Davidson*, *supra* at 370. Any postdivorce increase (or decrease) in the value of the property will be treated as an after-acquired asset, not subject to division, if the postdivorce increase (or decrease) is attributable only to the postdivorce efforts of one spouse. See *Daugherty* v. *Daugherty*, 50 Mass. App. Ct. 738, 741 (2001). Where postdivorce appreciation (or depreciation) is not attributable to the postdivorce efforts of one spouse alone after the divorce, division of the increase (or decrease) is appropriate. *Willis* v. *Willis*, 27 Mass. App. Ct. 1144, 1145-1146 (1989). In those situations, the property should be valued as of the date of the order of division. *Pare* v. *Pare*, 409 Mass. 292, 296 n.4 (1991). The trial judge may consider expenditures by one spouse, made both before and after the dissolution of the marriage, for the support and normal costs of raising a child, to determine if they offset expenses paid in maintaining the property by the other spouse. See *Pare* v. *Pare*, *supra* at 298. The Probate Court judge in this instance was charged with dividing the property anew, applying the § 34 factors as of the date of the divorce. He then was required to consider whether there had been any appreciation or depreciation with respect to the property, and if so, the extent to which such appreciation was attributable to one or the other of

---

[3]In providing that "[u]pon divorce or upon a complaint in an action brought at any time after a divorce, . . . the court may assign to either husband or wife all or any part of the estate of the other, including but not limited to, all vested and nonvested benefits, rights and funds accrued during the marriage and which shall include, but not be limited to, retirement benefits, military retirement benefits if qualified under and to the extent provided by federal law, pension, profit-sharing, annuity, deferred compensation and insurance," G. L. c. 208, § 34, expressly recognizes that determination of the parties' property rights may be deferred.

the parties or to some independent cause.[4] The hearing, and consideration of matters occurring subsequent to the divorce, was not violative of the rescript.

In a related argument, the husband contends that the trial judge erred in considering G. L. c. 208, § 34, factors subsequent to the divorce. By adopting his findings and his "Rationale," and affirming his judgment with respect to the marital property and debts in most aspects, the trial judge in effect considered the G. L. c. 208, § 34, factors[5] as of the date of the divorce, and he signaled his intent to leave undisturbed any increase or decrease in their value, with the exception of the Mashpee home, the Plymouth property, and certain of the debts. As noted, with respect to any increase in value of the Mashpee home, the judge was required to review the contributions, or lack thereof, that the parties had made since the divorce in 1995, to determine the source of any increase (or decrease) in value since the divorce. We conclude that, in considering certain aspects of the parties' behavior since the divorce, the accretion of certain assets to the husband and the contributions of the wife to the Mashpee home, all subsequent to the divorce, the trial judge properly considered factors affecting any increase in the value of the Mashpee home and the decrease in value of the Plymouth property. Consideration of the wife's contributions to the upkeep and improvement of the property, and her care of the children, coupled with the husband's expenditures on other items for his own benefit, and his irregular support of the children, which placed an additional burden on the wife to see to their care and support, were factors that the judge could properly consider in

---

[4]While not necessary, a better understanding of the trial court judgments in this regard might have been gained by an explicit statement with respect to the focus of the findings and conclusions.

[5]The G. L. c. 208, § 34, factors include the following: "the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. In fixing the nature and value of the property to be so assigned, the court shall also consider the present and future needs of the dependent children of the marriage. The court may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit."

determining whether appreciation of the marital property was solely attributable to the wife. See *Pare* v. *Pare*, 409 Mass. at 297. That some of these factors mirror those established in § 34 does not preclude their consideration in resolving postdivorce disputes, provided, as here, they are relevant to the issues.

The defendant's third contention, that the property division was an abuse of discretion because virtually one hundred per cent of the marital estate was awarded to the wife, is without merit as well. In the first instance, the husband's argument in this regard overlooks the fact that the original division awarded the Plymouth property and certain of the household furniture and furnishings to the husband. The judge determined that the resultant loss of equity in the Plymouth property in the time between the divorce and the hearing lay squarely with the husband. With respect to the Mashpee home, the husband does not claim, nor would the record support, that, as the home was originally purchased with a gift from his mother, he should be considered the sole owner and that the wife held joint title with him only by virtue of a resulting trust. Cf. *Krasner* v. *Krasner*, 362 Mass. 186 (1972). General Laws c. 208, § 34, provides in part that "the court may assign to either husband or wife all or any part of the estate of the other." A judge has broad discretion when dividing marital assets pursuant to G. L. c. 208, § 34. *Rice* v. *Rice*, 372 Mass. 398, 400 (1977). *Drapek* v. *Drapek*, 399 Mass. 240, 243 (1987). *Heins* v. *Ledis*, 422 Mass. 477, 480-481 (1996). "Such broad discretion is necessary in order that the courts can handle the myriad of different fact situations which surround divorces and arrive at a fair financial settlement in each case." *Rice* v. *Rice*, supra at 401. A judgment will not be disturbed on appeal unless "plainly wrong and excessive." *Pare* v. *Pare*, supra at 296, quoting from *Redding* v. *Redding*, 398 Mass. 102, 107 (1986). *Heins* v. *Ledis*, supra at 481. Given this broad discretion, we conclude that the award of the marital home to the wife was not plainly wrong and excessive, as would be required for reversal.

*Judgment affirmed.*