Merrimack
No. 2007-036

THE STATE OF NEW HAMPSHIRE

v.

SCOTT ABRAM

Argued: November 8, 2007
Opinion Issued: January 15, 2008

*Kelly A. Ayotte*, attorney general (*Ann M. Rice*, associate attorney general, on the brief and orally), for the State.

*Paul J. Garrity*, of Londonderry, on the brief and orally, for the defendant.

DUGGAN, J. The defendant, Scott Abram, appeals the sentence imposed by the Trial Court (*McGuire*, J.) upon remand from our decision in *State v. Abram*, 153 N.H. 619 (2006). We vacate and remand.

The relevant facts are not in dispute. In 2004, the defendant was convicted by a jury of twenty-one counts of aggravated felonious sexual assault, RSA 632-A:2 (2007), four counts of endangering the welfare of a child, RSA 639:3 (2007), and one count of indecent exposure and lewdness, RSA 645:1 (2007).

On June 25, 2004, the trial court sentenced the defendant to an aggregate fifty to one hundred years in the state prison. This cumulative sentence consisted of: (1) concurrent ten to twenty-year terms for three convictions (indictment nos. 03-S-149 through 03-S-151), which were to run consecutive to; (2) concurrent ten to twenty-year terms for three convictions (indictment nos. 03-S-1079, 04-S-322 and 04-S-323), which were to run consecutive to; (3) concurrent ten to twenty-year terms for three convictions (indictment nos. 03-S-143, 03-S-144 and 03-S-146), which were to run consecutive to; (4) concurrent ten to twenty-year terms for three convictions (indictment nos. 03-S-140 through 03-S-142), which were to run consecutive to; (5) concurrent ten to twenty-year terms for nine convictions (indictment nos. 03-S-135 through 03-S-137 and 03-S-1070 through 03-S-1075). For the remaining convictions, the defendant was sentenced as follows: (1) concurrent three-and-a-half to seven-year terms for indictments numbered 03-S-1080, 03-S-1081, 03-S-1082 and 04-S-324, to be served concurrently with the sentences imposed for indictments 03-S-135 through 03-S-137; and (2) twelve months for indictment number 03-S-1076, also to be served concurrently with the sentences imposed for indictments 03-S-135 through 03-S-137.

Following sentencing, the defendant appealed his convictions to this court, arguing that the charges against him should have been severed under *State v. Ramos*, 149 N.H. 118 (2003), because they arose from three "unrelated" courses of conduct. *Abram*, 153 N.H. at 623. We agreed with the defendant that the trial court had improperly joined several of the charges, and consequently reversed the convictions on nine indictments:

nos. 03-S-140, 03-S-141, 03-S-142, 03-S-149, 03-S-150, 03-S-151, 03-S-1070, 03-S-1074 and 03-S-1075. *Id.* at 630. However, we upheld the remainder of the defendant's convictions. *Id.* at 626. Accordingly, our mandate stated that the case was "[a]ffirmed in part; reversed in part; and remanded." *Id.* at 633.

Our reversal of nine of the twenty-one convictions caused a break in the sequences of sentences imposed by the trial court. Specifically, because all of the convictions underlying one of the ten to twenty-year sentences (indictment nos. 03-S-140 through 03-S-142) had been reversed, another ten to twenty-year sentence (indictment nos. 03-S-143, 03-S-144 and 03-S-146) was consecutive to a non-existent term. In addition, all of the convictions underlying another of the ten to twenty-year sentences (indictment nos. 03-S-149 through 03-S-151) were reversed. Both parties therefore agreed, upon remand, that some resentencing was required to alleviate this defect.

The State, however, requested that the trial court go further and restructure its sentence on the affirmed charges so that the defendant would "remain imprisoned for the same period of time as originally sentenced, a minimum of [fifty] years." The defendant argued, in contrast, that the trial court could amend the sentence solely to remedy the gap in sentencing noted above, but was not otherwise permitted to resentence him on the affirmed convictions. If the court had amended the sentence as the defendant requested, the resulting term of incarceration would have been thirty to sixty years.

On December 18, 2006, the trial court effectively reinstated its original fifty to one hundred-year sentence. It did so by dividing the convictions tied to one ten to twenty-year term (indictment nos. 03-S-135, 03-S-136, 03-S-137, 03-S-1071, 03-S-1072 and 03-S-1073) into two ten to twenty-year terms and making those terms consecutive, and dividing the convictions tied to another ten to twenty-year term (indictment nos. 03-S-143, 03-S-144 and 03-S-146) into two ten to twenty-year terms and making those terms consecutive. In support of its decision to impose the same period of incarceration as was imposed prior to the defendant's successful appeal, the trial court stated as follows:

> [T]his abuse had been ongoing for two years. The acts that occurred that were reversed, those convictions occurred within two months of all of the other convictions, so that it would not have mattered in my sentencing. My view is the same, that [the defendant] is [a] very dangerous person, that he committed heinous acts against these children over a long period of time, and that he's very dangerous to the community regardless of

those other nonconvictions [*sic*]. So for those reasons I want him
to spend the same amount of time in prison.

On appeal, the defendant argues that the court erred for two reasons:
First, he contends that the trial court, in resentencing him on the affirmed
convictions, went beyond the scope of the mandate in *Abram*. Second, he
argues that the trial court's conduct infringed upon his due process rights
under both Part I, Article 15 of the New Hampshire Constitution, and the
Fifth and Fourteenth Amendments to the United States Constitution. We
address each argument in turn.

### I. Scope of the Mandate

The defendant contends that, because *Abram* did not address any issues
concerning his sentence, the trial court was without authority to
restructure his sentence on the affirmed charges upon remand. Instead,
the defendant asserts our mandate limited the trial court's authority to
ordering a retrial on the charges reversed in *Abram*. We disagree.

As a general proposition, a trial court is bound by the mandate of an
appellate court on remand. *Johnson v. Johnson*, 759 N.E.2d 741, 744
(Mass. App. Ct. 2001); 5 C.J.S. *Appeal and Error* § 1137 (2007); *see also In
re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895). After all, the
"'mandate' is the official notice of action of the appellate court, directed to
the court below, . . . and directing the lower court to have the appellate
court's judgment duly recognized, obeyed, and executed." 5 AM. JUR. 2D
*Appellate Review* § 725 (2007). It follows *a fortiori* that a trial court is
barred from "act[ing] beyond the scope of the mandate," *In re Marriage of
Ludwinski*, 769 N.E.2d 1094, 1098 (Ill. App. Ct. 2002), or "vary[ing] it, or
judicially examin[ing] it for any other purpose than execution," *Wal-Mart
Stores v. Regions Bank Trust Dept.*, 156 S.W.3d 249, 252 (Ark. 2004)
(quotation omitted); *see also* 5 C.J.S. *supra* § 1129.

However, in ascertaining what the mandate commands, the "[trial] court
need not read the mandate in a vacuum, but rather has the opinion of the
appellate court to aid it . . . . In this way, the [trial] court may examine the
rationale of an appellate opinion in order to discern the meaning of
language in the court's mandate." 5 AM. JUR. 2D *supra* § 731. Indeed, it is
necessary that "[p]roceedings in the trial court on remand . . . . [are] in
accordance with both the mandate of the appellate court and the result
contemplated in the appellate opinion." *Id.*; *see Scarborough v. R.T.P.
Enterprises, Inc.*, 120 N.H. 707, 709 (1980); *Frost v. Liberty Mut. Ins. Co.*,
813 S.W.2d 302, 304-05 (Mo. 1991) *(en banc)*.

For that reason, the issue presented is more properly framed as
whether our opinion in *Abram*, read *in toto*, divested the trial court of

authority to resentence the defendant on the affirmed charges. We do not believe that it did. *Abram* reversed the enumerated convictions and affirmed the remaining ones. *Abram*, 153 N.H. at 629-30, 633. Neither the opinion nor the mandate addressed the issue of sentencing.

■■■■■ In arguing that the trial court was nevertheless in error because resentencing "was simply not authorized by the mandate," the defendant fails to appreciate the breadth of the trial court's discretion. Generally, a trial court is free upon remand to "take such action as law and justice may require under the circumstances as long as it is not inconsistent with the mandate and judgment of the appellate court." 5 C.J.S. *supra* § 1136. We therefore reject the defendant's implicit argument that trial courts are only permitted to engage in acts expressly authorized by the mandate. "Flexibility is necessary for trial courts, when reviewing decisions on remand, as appellate judgments are not self-executing." *Id.* § 1130. Thus, because our opinion in *Abram* neither expressly nor implicitly barred the trial court from resentencing the defendant on the affirmed charges, we reject the defendant's argument that the trial court went beyond the scope of the mandate.

## II. Due Process

The defendant argues next that, in resentencing on the affirmed charges, the trial court violated his due process rights under Part I, Article 15 of the New Hampshire Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution, in two distinct ways. First, he contends that the trial court's second sentence is effectively more severe than the first and, thus, is presumptively vindictive. *See State v. Goding*, 128 N.H. 267, 271 (1986). Second, he asserts that the trial court failed to warn him, at the initial sentencing hearing, that his sentence could later be amended. *See State v. LeCouffe*, 152 N.H. 148, 152 (2005).

In analyzing the defendant's due process claims, we look first to the New Hampshire Constitution, *State v. Marti*, 143 N.H. 608, 611 (1999), and cite "decisions of the United States Supreme Court and other jurisdictions only for the purpose of aiding our State constitutional analysis," *State v. Cannuli*, 143 N.H. 149, 151 (1998) (quotation omitted). Moreover, "[b]ecause Part I, Article 15 of the New Hampshire Constitution is at least as protective of the defendant's rights as the Due Process Clause of the Fourteenth Amendment .... we [need] not engage in a separate federal analysis." *Marti*, 143 N.H. at 611 (citations omitted). "Because this issue poses a question of constitutional law, we review it *de novo.*" *In the Matter of Berg & Berg*, 152 N.H. 658, 661 (2005).

■ We turn to the defendant's first contention. As this court has often stated, "a person convicted of an offense is entitled to pursue his statutory right to a[n appeal] without apprehension that the State will retaliate by . . . attempting to impose a heavier penalty for the same acts originally charged." *State v. Koski*, 120 N.H. 112, 115-16 (1980). In recognition of this right, "[d]ue process requires that any increased sentence or charge imposed on retrial not be the result of judicial or prosecutorial vindictiveness." *Goding*, 128 N.H. at 271. Moreover, in order to "free defendants of apprehension of such retaliatory motivation on the part of the [sentencing court,]" *United States v. Goodwin*, 457 U.S. 368, 376 (1982), the United States Supreme Court has "concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear" or else a presumption of vindictiveness will arise. *North Carolina v. Pearce*, 395 U.S. 711, 726 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989).

■ This presumption of vindictiveness does not arise in "every case where a convicted defendant receives a higher sentence on retrial." *State v. Hurlburt*, 135 N.H. 143, 147 (1991) (quotation omitted). Rather, it applies in only those situations where there is "a realistic likelihood of 'vindictiveness'." *Goodwin*, 457 U.S. at 375 (quotation omitted). The presumption has been thus held inapplicable where, for instance, the second sentence was imposed following a trial *de novo* in a two-tiered court system, *State v. Landry*, 131 N.H. 65, 66 (1988), and where the disparate sentences were imposed by two different judges, *Hurlburt*, 135 N.H. at 147.

■ But where, as here, the defendant's sentence has been increased upon remand by the same sentencing judge, there is greater potential for vindictiveness. In such cases, "the sentencing judge who presides at both trials can be expected to operate in the context of roughly the same sentencing considerations after the second trial as he does after the first." *Alabama v. Smith*, 490 U.S. at 802. Accordingly,

> [w]hen a defendant receives a more severe sentence from the same sentencing judge on retrial after appeal, judicial vindictiveness is presumed unless the judge states the reasons for the increased sentence on the record, and those reasons are based on objective information concerning identifiable conduct on the part of the defendant occurring *after* the time of the original sentencing procedure.

*Goding*, 128 N.H. at 271.

■ Initially then, we must determine whether the trial court's modification of the sentencing terms resulted in a harsher sentence for the defendant. *Id.* The State asserts that the second sentence is not more severe because the period of incarceration imposed following appeal is the same as the period imposed following trial. However, "[i]n determining whether the second sentence is harsher than the first, we look not at the technical length of the sentence but at its overall impact on [the defendant]." *United States v. Williams*, 651 F.2d 644, 647 (9th Cir. 1981). In this case, the defendant initially received three ten to twenty-year sentences on the convictions affirmed in *Abram*. Upon remand, the trial court increased these sentences by severing two of the ten to twenty-year sentences into two additional ten to twenty-year sentences, and making all of the new terms run consecutively. Such a modification had the overall impact of increasing the sentences on the affirmed charges, which is sufficiently harsher for due process purposes. *See State v. Macumber*, 582 P.2d 162, 168-69 (Ariz. 1978) (holding that the conversion of two concurrent life sentences into two consecutive life sentences was an increase in punishment warranting the presumption of vindictiveness under *Pearce*); *cf. State v. Huot*, 136 N.H. 96, 99-101 (1992).

■ Having determined that the second sentence is more severe than the first, we turn next to the rationale proffered by the trial court in support of its sentence. *See Williams*, 651 F.2d at 647. As noted above, the trial court stated that it was imposing the same sentence because, regardless of the reversal of over a third of the defendant's convictions, its "view [wa]s the same, that [the defendant] is [a] very dangerous person." Distilled to its essence, this justification is merely a reiteration of the trial court's belief that the defendant's character and conduct warrant a severe punishment. It is not a justification "based on objective information concerning identifiable conduct on the part of the defendant occurring *after* the time of the original sentencing procedure." *Goding*, 128 N.H. at 271. Indeed, the trial court failed to reference any conduct occurring after the initial sentencing procedure. We thus agree with the defendant that a presumption of vindictiveness arises in this case by operation of law, and that he is not required to present evidence of actual vindictiveness to prevail on his claim. *See Wasman v. U.S.*, 468 U.S. 559, 569 (1984) ("where the presumption applies, the sentencing authority ... must rebut the presumption that an increased sentence ... resulted from vindictiveness; where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness").

The State's brief fails to point to any new evidence that came to light subsequent to imposition of the first sentence and which justifies the

increase in the defendant's sentence. Instead, the State urges us to adopt the "sentencing package" doctrine which has been applied in similar situations by some federal courts. *See, e.g., United States v. Shue,* 825 F.2d 1111, 1113-14 (7th Cir. 1987), *cert. denied,* 484 U.S. 956 (1987); *United States v. Handa,* 122 F.3d 690, 692 (9th Cir. 1997); *United States v. Townsend,* 178 F.3d 558, 567 (D.C. Cir. 1999). Pursuant to the "sentencing package" principle, the federal courts presume that "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan." *Townsend,* 178 F.3d at 567 (quotation omitted). With this in mind, several federal courts have held that when one or more counts of a "bundled" sentence are vacated, "the [federal] district court may 'rebundle' the package by resentencing the defendant" on the affirmed charges "in order to effectuate its original sentencing intent." *United States v. Binford,* 108 F.3d 723, 728 (7th Cir. 1997) (quotation omitted).

Although we have never considered this issue, the only other states which have been urged to adopt the federal "sentencing package" doctrine have declined to do so. *See Wilson v. State,* 170 P.3d 975, 979 (Nev. 2007); *State v. Saxon,* 846 N.E.2d 824, 827 (Ohio 2006). For instance, in *Wilson,* a case that shares striking similarities with the present one, the defendant had been convicted by a jury of four counts of production of child pornography and four counts of possession of child pornography. *Wilson,* 170 P.3d at 976. After the Nevada Supreme Court reversed three of the production charges, the district court altered its original sentence by increasing the sentences on each affirmed possession conviction and making those sentences run consecutively, instead of concurrently, as originally specified. *Id.* The defendant appealed, arguing that the district court had violated his right against double jeopardy by increasing the sentences tied to the affirmed convictions. *Id.* at 976-77. The State, recognizing that present case law pointed towards reversal, *see Dolby v. State,* 787 P.2d 388, 389 (Nev. 1990), argued that the court should adopt the federal "sentencing package" doctrine and affirm. *Wilson,* 170 P.3d at 977.

The Nevada Supreme Court declined the State's invitation and reversed. *Id.* at 977-80. The court reasoned that the sentencing package doctrine is "uniquely adapted to federal sentencing law" for several reasons, the principal one being that:

> the doctrine appears to have complemented the determinate sentencing goals of the Federal Sentencing Guidelines' previously mandatory regime. Under that regime, a sentencing

"package" was partly predicated on a base offense level, which determined the applicable Guidelines range. Thus, partially overturning a conviction on appeal risked unraveling the computations underlying the base offense level and, in effect, "unbundling" the sentencing package. In such a case, the resentencing court was *required* to recompute the base offense level in light of the remaining counts and revise the entire sentencing package accordingly.

*Id.* at 979 (citations omitted). Because, in part, "the State fail[ed] to argue that ... sentencing in Nevada ha[d] somehow reached extremes of complexity analogous to federal sentencing law," the court held that the predicates for adopting the sentencing package doctrine did not exist in that state. *Id.* at 980.

Similarly, in *Saxon*, the Ohio Supreme Court accepted jurisdiction to determine, in effect, whether the sentencing package doctrine applied in Ohio. *Saxon*, 846 N.E.2d at 827. In resolving this question, the court first acknowledged that the rationale for the doctrine "makes good sense when considering the many multicount and interrelated sentencing enhancements considered and used by federal judges applying the Federal Sentencing Guidelines." *Id.* But, it determined that the rationale "fails in Ohio where there is no potential for an error in the sentence for one offense to permeate the ... group of sentences" because the state's "felony-sentencing scheme is ... designed to focus the judge's attention on one offense at a time." *Id.* at 827-28. The court thus reversed the trial court and held that "[t]he sentencing-package doctrine has no applicability to Ohio sentencing laws." *Id.* at 828.

We agree with *Wilson* that the sentencing package doctrine is uniquely adapted to federal sentencing law. *Wilson*, 170 P.3d at 979. Moreover, as in *Saxon*, our sentencing rubric lacks the interrelatedness that justifies application of the doctrine in the federal realm. *Saxon*, 846 N.E.2d at 827-28.

 But we also believe that, in addition to the concerns espoused by the courts in *Wilson* and *Saxon*, public policy considerations militate against adopting the sentencing package doctrine in this State. The doctrine promotes a blanket rule that affords trial courts the discretion to resentence all defendants who happen to have multicount convictions, regardless of whether the individual charges are actually interrelated. There is a risk, therefore, that the doctrine could permit vindictively-motivated sentences under the guise of procedural necessity. Such discretion could chill defendants in exercising their right to appeal and prevent meritorious claims from being litigated. Because we believe such a

chilling effect is precisely the harm that *Pearce* and its progeny sought to prevent, *see Pearce*, 395 U.S. at 724-25, we decline the State's invitation to adopt the sentencing package doctrine at this time. *See California v. Ramos*, 463 U.S. 992, 1014 (1983) ("States are free to provide greater protections in their criminal justice system than the Federal Constitution requires."). Accordingly, because the State has failed to rebut the presumption of vindictiveness, we vacate the sentence imposed by the trial court and remand for resentencing or other proceedings consistent with this opinion and our opinion in *Abram*. In light of this conclusion, we need not address the defendant's remaining argument.

*Sentence vacated and remanded.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.