NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

10th Circuit Court – Salem District Division
No. 2012-716


THE STATE OF NEW HAMPSHIRE

v.

BRYAN MAGA

Argued:  October 16, 2013
Opinion Issued:  May 16, 2014


Michael A. Delaney, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.


Mark Stevens, of Salem, on the brief and orally, for the defendant.


BASSETT, J.  The defendant, Bryan Maga, appeals his conviction, following a bench trial, for driving with an alcohol concentration of .02 or higher, while he was under the age of twenty-one (DUI).  See RSA 265-A:2 (Supp. 2012) (amended 2013).  On appeal, he argues that the 10th Circuit Court – Salem District Division (Moore, J.) erred when it:  (1) admitted into evidence a certificate from a state crime laboratory employee attesting that the breathalyzer machine used by the Salem Police Department was in working order; and (2) ruled that the police had probable cause to arrest him.  We affirm.

The following facts are drawn from the record or are otherwise undisputed. On June 15, 2012, the defendant, who was nineteen, was driving in Salem when a police officer stopped him for a defective brake light. When the officer approached the car, he smelled alcohol and observed that the defendant's eyes were glassy and red. The officer asked the defendant for his license, but the defendant did not produce it. When the officer asked the defendant whether he had consumed any alcohol that evening, the defendant admitted to drinking one beer about thirty minutes prior to the stop. He then agreed to take field sobriety tests.

The officer conducted three field sobriety tests: a horizontal-gaze nystagmus test; a walk-and-turn test; and a one-leg stand test. The officer gave the defendant a score of six on the horizontal-gaze nystagmus test (a score over four suggests impairment), three on the walk-and-turn test (a score of two or more suggests impairment), and one on the one-leg stand test (a score of two or more suggests impairment). Thereafter, the defendant disclosed that he had actually consumed two beers at the home of a friend. Based upon the defendant's statements, his glassy and red eyes, the smell of alcohol emanating from his car, and the results of the field sobriety tests, the officer concluded that the defendant was impaired and took him into custody. After arriving at the police station, a second police officer administered a breathalyzer test, which showed that the defendant had a blood alcohol concentration of 0.09.

The defendant was charged with DUI under RSA 265-A:2, in two alternative complaints: one alleging that he drove a motor vehicle while impaired, see RSA 265-A:2, I(a), and the other that he drove a motor vehicle while he had an alcohol concentration in excess of 0.02, and while he was under the age of twenty-one, see RSA 265-A:2, I(b).

Prior to trial, the defendant gave the State notice that he would object to the admission into evidence of "any certificates or documents regarding any breath testing machine without the opportunity to confront the person or persons who prepared and signed any such certificates or documents." During trial, the State sought to introduce into evidence a certificate from a state crime laboratory employee attesting to the fact that the breathalyzer machine used to test the defendant was in working order. The certificate contained the following two statements:

> . . . I hereby certify that on this date I completed the preventive maintenance check on the Intoxylizer 5000 EN, serial [number] 68-010372 located at the Salem Police Department[;]

and

I found said instrument and external standard reference, Guth 2100 simulator serial [number] DR 4259 to be in proper working order as of February 10, 2012.

The defendant objected, arguing that "[t]he certificate . . . contains a statement that – from somebody at the State lab who's not here . . . [it's] a testimonial statement. This is obviously prepared for litigation." The defendant further contended that the statement from the state laboratory employee was equivalent to the statement from the laboratory analyst in Melendez–Diaz v. Massachusetts, 557 U.S. 305 (2009), certifying a drug testing report, which was held inadmissible as a testimonial statement. He argued, therefore, that under the Confrontation Clause, the court should not admit the breathalyzer certificate unless the defendant had the opportunity to cross-examine the state laboratory employee. The State countered that the statement was not testimonial. The court overruled the objection.

At the close of trial, the defendant moved to dismiss the DUI charges, arguing that there was no probable cause for his arrest. The court denied the motion. The court subsequently found the defendant guilty of driving with a blood alcohol concentration in excess of 0.02 while under the age of twenty-one. Although the record is not clear as to the second charge, the parties agree that the court found him not guilty of driving while impaired. This appeal followed.

The defendant argues that admitting the breathalyzer certificate into evidence violated his rights under the State and Federal Confrontation Clauses because he did not have an opportunity to cross-examine the person who prepared the certificate. See U.S. CONST. amend. VI; N.H. CONST. pt. I, art. 15. He also argues that the officer lacked probable cause for his arrest and, therefore, that the trial court erred in denying his motion to dismiss. We address these arguments in turn.

I. Confrontation Clause

We review the defendant's Confrontation Clause challenge de novo. State v. Brooks, 164 N.H. 272, 278 (2012). When a defendant raises a claim under both the State and Federal Constitutions, we typically address his State claim first. See State v. Ayer, 154 N.H. 500, 504 (2006). Here, although the defendant invokes the Confrontation Clause protections of both the State and Federal Constitutions, his argument relies upon his rights as interpreted under the Federal Constitution: He contends that admitting the breathalyzer certificate into evidence, without providing him with the opportunity to cross-examine the state crime laboratory employee who prepared and signed the certificate, is contrary to Crawford v. Washington, 541 U.S. 36 (2004), and Melendez-Diaz. We have not adopted the Crawford analysis under the State

Constitution, and the defendant does not argue that we should do so now. See State v. Munoz, 157 N.H. 143, 148 (2008). Nor does he address the applicability of the Confrontation Clause test that we have adopted – namely, that of Ohio v. Roberts, 448 U.S. 56 (1980). See Brooks, 164 N.H. at 282; Ayer, 154 N.H. at 511. Accordingly, we conclude that the defendant has not established that admission of the breathalyzer certificate violated his rights under Part I, Article 15 of the New Hampshire Constitution. See Munoz, 157 N.H. at 148 (concluding that defendant did not prevail on State Confrontation Clause argument as he did not argue the standard we apply under State Constitution). We therefore turn to his argument under the Federal Constitution.

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Fourteenth Amendment renders the Confrontation Clause binding on the States. Michigan v. Bryant, 131 S. Ct. 1143, 1152 (2011). The Supreme Court has concluded that the Confrontation Clause guarantees a defendant the opportunity to confront any person whose testimonial statements are introduced against him, and to assess the reliability of those statements "in the crucible of cross-examination." Crawford, 541 U.S. at 61.

Thus, only "testimonial statements" cause a declarant to be a "witness" within the meaning of the Confrontation Clause. Davis v. Washington, 547 U.S. 813, 821 (2006). Accordingly, "[t]he crucial determination under Crawford as to whether an out-of-court statement violates the Confrontation Clause is whether it is 'testimonial' or not." State v. O'Maley, 156 N.H. 125, 131 (2007), overruled in part by Melendez–Diaz, 557 U.S. at 312–20. "While Crawford endeavored to leave for another day any effort to spell out a comprehensive definition of 'testimonial', the Court instructed that various formulations of this core class of testimonial statements exist." Commonwealth v. Zeininger, 947 N.E.2d 1060, 1068 (Mass. 2011) (quotation, citation, and brackets omitted). These formulations all share "a common nucleus," and include:

> "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," "extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" [and] "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

4

Id. (quoting Crawford, 541 U.S. at 51-52 (citations and ellipses omitted)).

A statement is testimonial if its primary purpose is "to establish or prove past events potentially relevant to later criminal prosecution." Brooks, 164 N.H. at 279 (quotation omitted). "If the primary purpose of creating the record is not to prove a fact at trial, the admissibility of the records is the concern of state and federal rules of evidence, not the Confrontation Clause." Id. (quotation omitted). Under this reasoning, business and public records are generally admissible, without confrontation, because they have been "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial," and, therefore, are not testimonial. Melendez–Diaz, 557 U.S. at 324; see also Brooks, 164 N.H. at 279.

The defendant contends that the breathalyzer certificate in this case, like the drug certificates in Melendez-Diaz, is testimonial because it "bears a solemn affirmation" from the state laboratory employee, was created pursuant to a statute, and bears the seal and signature of a Justice of the Peace. The State responds that the breathalyzer certificate is not testimonial because it was not created for the "sole purpose" of providing evidence against the defendant and indeed did not directly inculpate him or prove an essential element of the charge against him; rather, it was intended only to serve as a foundation for the admission of substantive evidence. We agree with the State that this breathalyzer certificate is not testimonial.

The defendant relies upon Melendez-Diaz to support his argument. In Melendez-Diaz, the Supreme Court held that drug testing result reports from analysts at a state laboratory were testimonial and subject to the Confrontation Clause because they were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," and the "sole purpose of the affidavits was to provide prima facie evidence of the composition, quality, and the net weight of the analyzed substance." Melendez-Diaz, 557 U.S. at 310-311 (quotations omitted). The Supreme Court added that "the analysts were aware of the affidavits' evidentiary purpose, since that purpose – as stated in the relevant state-law provision – was reprinted on the affidavits themselves." Id. at 311.

Unlike the certificates in Melendez-Diaz, the breathalyzer certificate here did not provide case-specific evidence against a particular defendant. In Melendez-Diaz, the drug analysis certificates were direct proof of an element of the offense charged. Melendez-Diaz, 557 U.S. at 310-11. Here, although RSA 265-A:12, II (Supp. 2013) enables a party to introduce into evidence "[a] copy of the preventive maintenance check form filled out by the forensic breath testing supervisor who performed the last preventive maintenance check," this type of certificate does not establish an element of the offense of driving under the influence. See RSA 265-A:2, I. It does not contain any information regarding

5

the defendant's blood alcohol concentration, nor address the specifics of his case. Notably, the breathalyzer certificate at issue here was created in February 2012, several months before the defendant's June 2012 arrest. Rather, it describes the results of sample testing and the calibration of the machine, and attests that the machine is in "proper working order." Thus, the primary purpose of the certificate is to ensure the reliability and quality of the testing machine used by the police, and therefore serves only as the foundation for the admission of substantive evidence. See RSA 265-A:12, II (allowing certificate into evidence); N.H. Admin. Rules, Saf-C 6302.04 (requiring forensic breath testing supervisor to conduct preventive maintenance check every six months); Brooks, 164 N.H. at 281-82 (distinguishing Melendez-Diaz because documents at issue, authenticating various business records, served as foundation for admission of substantive evidence and certificates themselves were of minimal evidentiary value). The substantive evidence here was the testimony by the police officer who conducted the breath testing as to the test results.

As the Massachusetts Supreme Judicial Court recently explained, breathalyzer certificates "bear a more attenuated relationship to conviction" than does testimonial evidence: "They support one fact (the accuracy of the machine) that, in turn, supports another fact that can establish guilt (blood alcohol level)." Zeininger, 947 N.E.2d at 1069 (quotation omitted). The court observed that in Melendez–Diaz the Supreme Court recognized this distinction: "'Contrary to the dissent's suggestion we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. Documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.'" Zeininger, 947 N.E.2d at 1069 (quoting Melendez-Diaz, 557 U.S. at 311 n. 1; brackets and ellipses omitted; emphasis added); but cf. Com. v. Dyarman, 73 A.3d 565, 571 (Pa. 2013) ("The footnote in Melendez–Diaz does not create a blanket rule of admissibility for any hearsay evidence relevant to establishing the accuracy of a testing device. It merely states that such evidence will not be deemed testimonial in every case." (quotation and brackets omitted)), cert. denied, 134 S. Ct. 948 (2014). We agree. Accordingly, we hold that the certificate attesting that the breathalyzer was in working order is nontestimonial in nature because it was "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." Melendez-Diaz, 557 U.S. at 324. Thus, the admission of the certificate into evidence did not violate the defendant's rights under the Confrontation Clause of the Federal Constitution.

In concluding that the breathalyzer certificate is not a testimonial statement, we join courts in other jurisdictions that have held that breathalyzer certificates are distinguishable from the certificates at issue in Melendez–Diaz

because their primary purpose is effective administration rather than prosecution. See, e.g., Zeininger, 947 N.E.2d 1070; People v. Pealer, 985 N.E.2d 903, 908 (N.Y. 2013); Chambers v. State, __ S.W.3d ___, ___, 2012 WL 5360966, at *8 (Ark. Nov. 1, 2012); State v. Kramer, 278 P.3d 431, 437-39 (Idaho Ct. App. 2012); Matthies v. State, 85 So. 3d 838, 844 (Miss. 2012); Dyarman, 73 A.3d at 569. In fact, the defendant has not cited, nor have we found, any case that holds that breathalyzer certificates are testimonial.

The defendant's brief could be read to argue that, because the trial court erred in admitting the breathalyzer certificate, there was insufficient evidence to support the verdict. Because we find that the trial court did not err in admitting the breathalyzer certificate, we need not address this argument.

## II. Probable Cause

After the State rested its case, the defendant moved to dismiss, arguing that the officer lacked probable cause to arrest him. The court denied the motion.

On appeal, the defendant contends that the police lacked probable cause to arrest him for DUI because he did not demonstrate sufficient signs of intoxication. The defendant argues that, although his brake light was not functioning properly, he was otherwise driving normally – he reacted appropriately to traffic signals, stayed within his lane, drove at an average speed, and responded normally and promptly when the officer activated his blue lights to initiate the stop. He further explains that although his eyes were red, he had been smoking, and that cigarette smoke can cause red eyes. He also stresses that his speech was not slurred. The State responds that the facts were sufficient to establish probable cause that the defendant had committed a DUI offense.

An officer has probable cause to arrest when he or she has "knowledge and trustworthy information sufficient to warrant a person of reasonable caution and prudence in believing that the arrestee has committed an offense." Ojo v. Lorenzo, 164 N.H. 717, 722 (2013) (quotation omitted). "In determining whether the police had probable cause, we review reasonable probabilities and not the amount of evidence required to sustain a conviction or to make out a prima facie case." State v. Newcomb, 161 N.H. 666, 669 (2011) (quotation omitted). "We are not bound by mathematical calculations in making this determination," but instead "must approach the issue with a concern for the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." Id. (quotation omitted). "We will not overturn a trial court's determination of probable cause unless, when the evidence is viewed in the light most favorable to the State, the decision is

contrary to the manifest weight of the evidence." State v. Vandebogart, 139 N.H. 145, 164 (1994).

Contrary to the defendant's argument, when the officer placed the defendant under arrest, the officer had sufficient evidence suggesting that the defendant had committed a DUI offense. The defendant failed to produce his license when the officer requested it; he told the officer that he had consumed two beers; and the officer observed that the defendant's eyes were glassy and red and noticed that the odor of alcohol emanated from the defendant's car. Although the defendant did not exhibit impairment in one field sobriety test, he exhibited impairment in the other two. These facts, taken as a whole, provided the officer with probable cause to arrest the defendant for operating his vehicle in violation of RSA 265-A:2, I. See Newcomb, 161 N.H. at 669-70; Fisher v. State, ___ S.W.3d ___, ___, 2013 WL 1904657, at *8 (Ark. Ct. App. May 8, 2013) (probable cause for arrest existed where defendant admitted that he had been drinking, his eyes were bloodshot and watery, he smelled of intoxicants, and he failed two of three field-sobriety tests); cf. Smith v. State ex rel. Dept. of Transp., 11 P.3d 931, 933, 937 (Wyo. 2000) (in appeal from suspension of driver's license, police officer had probable cause to arrest when individual failed two out of three sobriety tests, among other indicators of intoxication).

Viewing the evidence in the light most favorable to the State, we conclude that the trial court's determination of probable cause was not contrary to the manifest weight of the evidence.

Affirmed.

DALIANIS, C.J, and HICKS, CONBOY, and LYNN, JJ., concurred.