NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

6th Circuit Court – Hillsborough District Division
No. 2014-025


THE STATE OF NEW HAMPSHIRE

v.

ALEX DUCHARME

Argued: February 19, 2015
Opinion Issued: May 12, 2015


Joseph A. Foster, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.


Law Offices of Robert J. Moses, of Amherst (Robert J. Moses on the brief and orally), for the defendant.


CONBOY, J. The defendant, Alex Ducharme, appeals his conviction, following a bench trial, for driving under the influence of intoxicating liquor (DUI). See RSA 265-A:2 (Supp. 2012) (amended 2012). He argues that the Circuit Court (Stephen, J.) erred when it: (1) ruled that the police had probable cause to arrest him for DUI; (2) concluded that a valid arrest for DUI had occurred and, therefore, that the implied consent statute applied; (3) admitted evidence obtained after he had invoked his Miranda rights and failed to consider the "confusion doctrine"; and (4) found the evidence sufficient to convict him of DUI. We affirm.

The testimony at trial established the following sequence of events. On March 5, 2011, the bouncer at Rednecks Bar and Grill in Antrim was called outside at around midnight to deal with an altercation that had originated in the bar and then "spilled . . . into the parking lot." The police were called and an officer from the Antrim Police Department was dispatched to the bar. When the officer arrived, he first met with the bouncer and then made contact with one of the people involved in the altercation.

While he was outside, the bouncer saw the defendant drive into the bar's parking lot and park. The defendant got out of the vehicle from the driver's side and then "got into an altercation with another" man. The bouncer told the defendant and the other man several times to "back down." The bouncer testified that he could smell alcohol on the defendant. When "neither party would back down," the bouncer went to the officer for assistance. The officer approached the men, and then, to separate him from the situation, escorted the defendant back to his cruiser.

Once they were at the cruiser, the officer noticed that the defendant's "eyes were bloodshot and red." He also noticed "a distinctive odor of alcohol coming from [the defendant's] breath," and that the defendant "was having trouble with his balance." While the officer was talking with the defendant, another fight broke out in the parking lot. The officer handcuffed the defendant and placed him in the back of the cruiser so that the officer could "figure out exactly what was going on." The officer left the defendant in the cruiser and went to separate the two individuals involved in the latest fight. When he returned to his cruiser, he arrested the defendant for simple assault, after which he "detected a distinct odor of alcohol" in the cruiser that had not been there before he placed the defendant in the cruiser. Before the officer transported the defendant to the Hillsborough police station, he spoke with the bouncer, who informed the officer that he had observed the defendant drive into the parking lot.

At the police station, the officer brought the defendant to the booking room and read him his <u>Miranda</u> rights. <u>See</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). The defendant made clear that he understood his rights and that he did not wish to speak with the officer or answer questions without a lawyer present. The officer then read to the defendant the Administrative License Suspension (ALS) form. <u>See</u> RSA 265-A:4 (Supp. 2012) (amended 2012). The first line of the ALS form states: "You have been arrested for an offense arising out of acts alleged to have been committed while you were driving under the influence of alcohol or drugs." The officer asked the defendant if he understood what had been read to him and the defendant said that he did not. The officer asked the defendant what he did not understand and the defendant simply repeated that he did not understand.

2

The officer then "explained everything to [the defendant] again." He told the defendant "that [he] had been called . . . to Rednecks Bar & Grill for a past-tense assault" and that "[w]hile taking that report [he] had witnessed [the defendant] assault another male." He explained that he had "witness statements stating that [the defendant] drove away from Rednecks and then drove back, and that's where we were at . . . that moment." The officer testified that the purpose of this explanation was to tell the defendant "why I was reading the ALS form, why he was under arrest . . . [f]or driving while intoxicated."

The officer reread the first line to the defendant and asked him again if he understood. The defendant stated that he did, after which the officer read the remainder of the ALS form to the defendant line by line, asking him after reading each line whether he understood. Several times the defendant indicated that he did not understand. The officer "explained everything to him" and the defendant then initialed next to each line indicating that he understood. The officer testified that the defendant first refused to sign the ALS form granting consent to the requested testing. The officer explained that the defendant was "[h]esitating, he wasn't sure what to do, how to proceed." He stated that he told the defendant that it was up to him to make the decision as to whether to submit to the requested testing and that he gave the defendant time to think about it. Thereafter, the defendant signed the form and "agreed to the requested testing." During this process, the defendant "stated to [the officer] that he was drunk."

The officer then administered the horizontal gaze nystagmus (HGN), the walk-and-turn, the one leg stand, and the Romberg balance field sobriety tests. He determined that the defendant failed the HGN and the walk-and-turn tests. The defendant also took a breath test, and the results indicated that he had a blood alcohol level of 0.17.

At trial, the defendant objected to the admission of the ALS form and the results of the field sobriety tests and the breath test. He claimed that he had been arrested only for simple assault and, therefore, that the implied consent statute did not apply to him because he had not been arrested for an offense arising out of acts committed while he was driving under the influence of intoxicating liquor or controlled drugs. The trial court overruled the defendant's objection.

Subsequently, the defendant moved for reconsideration, maintaining that, because the implied consent statute did not apply to him, it was improper for the officer to use the ALS form and, as a result, the form and any evidence derived therefrom should be suppressed. Alternatively, the defendant contended that the officer did not have probable cause to arrest him for DUI. The State disagreed, arguing that the defendant was effectively arrested for DUI

3

when the officer read him the first line of the ALS form, and that probable cause to do so existed at that time.

The trial court agreed with the State and ruled that the defendant was arrested for DUI when the officer read him the first line of the ALS form. The court further found that there was probable cause for the defendant's arrest because the officer "had observed indicia of impairment at the scene, including an odor of alcohol, unsteadiness on feet, and bloodshot eyes. Further, a report from the bouncer was received that the Defendant drove to the scene . . . ." Thus, the court concluded that, "[u]nder this totality of the circumstances, there was sufficient probable cause to allow the officer to make an arrest for" DUI.

The defendant again moved for reconsideration, reiterating his arguments that he was improperly arrested for driving under the influence. He further argued that the officer's administration of <u>Miranda</u> followed by the defendant's invocation of the right to remain silent "required that the officer clarify and explain to the Defendant the distinction between his right to remain silent as to an assault case versus the absence of that right for the narrow purpose of ALS." According to the defendant, because the officer did not clarify this distinction, the results of the field sobriety tests and the breath test should be suppressed under the "confusion doctrine." The State objected, asserting that New Hampshire has not adopted the "confusion doctrine," but that even if the court were to apply the doctrine, "[t]here is no objective evidence in this case that [the defendant] was confused about his right to remain silent or to counsel." The trial court denied the defendant's motion and found him guilty of the DUI charge. This appeal followed.

I.     Probable Cause and DUI Arrest

On appeal, the defendant argues that the trial court erred by concluding that the officer had probable cause to arrest him for DUI. He also contends that there was no evidence that a valid arrest for DUI occurred, and that without such an arrest, the implied consent statute did not apply. He maintains, therefore, that the court should have excluded the ALS form as well as the results from the field sobriety test and the breath test.

We begin by addressing whether the officer had probable cause to arrest the defendant for DUI. An officer has probable cause to arrest when he or she has "knowledge and trustworthy information sufficient to warrant a person of reasonable caution and prudence in believing that the arrestee has committed an offense." <u>State v. Maga</u>, 166 N.H. 279, 286 (2014) (quotation omitted). "In determining whether the police had probable cause, we review reasonable probabilities and not the amount of evidence required to sustain a conviction or to make out a <u>prima</u> <u>facie</u> case." <u>Id</u>. (quotation omitted). "We are not bound by mathematical calculations in making this determination," but instead "must

4

approach the issue with a concern for the factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians, act." Id. at 286-87 (quotations and brackets omitted). In assessing whether an officer had probable cause, we do not view each item of evidence separately, but rather as a whole, and from the arresting officer's point of view at the time the arrest was made. State v. Vandebogart, 139 N.H. 145, 164 (1994). "We will not overturn a trial court's determination of probable cause unless, when the evidence is viewed in the light most favorable to the State, the decision is contrary to the manifest weight of the evidence." Maga, 166 N.H. at 287 (quotation omitted).

The defendant argues that the officer had no knowledge regarding whether and when the defendant had been driving or how long he had been back at the bar before the officer made contact with him. However, it was not necessary for the officer to have actually observed the defendant driving to have probable cause to arrest him for DUI. See State v. Farah, No. A13-2017, 2014 WL 1875904, at *5 (Minn. Ct. App. May 12, 2014) (finding that trooper had probable cause to arrest defendant for driving while intoxicated based upon witness's identification of him as driver and trooper's observations of defendant); McCabe v. Director of Revenue, 7 S.W.3d 12, 13-14 (Mo. Ct. App. 1999) (concluding that officer had probable cause to arrest driver for driving while intoxicated because witness informed officer that he had seen driver operating vehicle and officer then smelled alcohol on driver's breath). Nor was it necessary for the officer to know the exact time the defendant drove or precisely how long he had been back at the bar. As explained above, in assessing whether an officer has probable cause, we are not bound by "mathematical calculations," but instead "must approach the issue with a concern for the factual and practical considerations of everyday life on which reasonable and prudent people, not legal technicians, act." Maga, 166 N.H. at 286-87 (quotations and brackets omitted).

We conclude that the officer had sufficient evidence suggesting that the defendant had committed a DUI offense. When the officer first escorted the defendant to his cruiser, he observed that the defendant's "eyes were bloodshot and red." He also noticed "a distinctive odor of alcohol coming from [the defendant's] breath" and that the defendant "was having trouble with his balance." After the officer arrested the defendant for simple assault, he "detected a distinct odor of alcohol" in the cruiser that had not been there before he placed the defendant in the cruiser. Before the officer transported the defendant to the police station, the bouncer told him that he had observed the defendant drive into the parking lot. The officer responded affirmatively to the prosecutor's question as to whether, based upon the bouncer's statements, "it was a continuous event, [the defendant] driving back and then [the officer] making contact." These facts, taken as a whole, provided the officer with probable cause to arrest the defendant for DUI before he read the ALS form to the defendant.

Nonetheless, the defendant argues that he was never actually arrested for DUI and, therefore, the implied consent statute did not apply. Relying upon our interpretation of the implied consent statute in Saviano v. Director, New Hampshire Division of Motor Vehicles, 151 N.H. 315 (2004), the defendant contends that, in order for the State to invoke the implied consent statute, a driver must "be arrested for an offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence." The defendant argues that the trial court erroneously ruled that, by reading the first line of the ALS form, the officer arrested him for DUI. The defendant maintains that he was arrested only for simple assault, and, therefore, the implied consent statute did not apply. Accordingly, he contends that the court should have excluded the ALS form as well as the results from the field sobriety test and the breath test.

The trial court found that the defendant was arrested for DUI when the officer read him the first line of the ALS form stating: "You have been arrested for an offense arising out of acts alleged to have been committed while you were driving under the influence of alcohol or drugs." It is undisputed that when the officer read the first line of the ALS form to him, the defendant was already under arrest for simple assault. Thus, the issue is whether the officer's reading of the first line of the ALS form effectuated an arrest for DUI as a matter of law. See State v. Underwood, 661 S.E.2d 529, 531-32 (Ga. 2008) (applying de novo standard of review to determine whether officer's reading of implied consent law to defendant who was under arrest for an offense other than driving under influence constituted a second arrest for a violation of driving under influence statute). We review questions of law de novo. In re 1994 Chevrolet Cavalier, 142 N.H. 705, 707 (1998).

As discussed above, the officer had probable cause, at the time he read the ALS form to the defendant, to arrest him for DUI. RSA 594:1 (2001) defines an "arrest" as "the taking of a person into custody in order that he may be forthcoming to answer for the commission of a crime." Here, the defendant was in custody by virtue of his arrest for simple assault. We conclude that, because the officer had probable cause to arrest the defendant for DUI, and because the defendant was already in custody as a result of his arrest for simple assault, the officer's reading of the first line of the ALS form constituted arrest of the defendant for DUI. See Underwood, 661 S.E.2d at 532, 530-31 (holding that "coincidence of probable cause to arrest" defendant for violating DUI statute and defendant's "actual arrest" meant that defendant was arrested for DUI when officer read statutory warning, even though officer mentioned two potential charges other than DUI at time of initial arrest and did not tell defendant that he was under arrest for DUI before reading statutory warning); see also Appeal of Dungan, 681 P.2d 750, 753 (Okla. 1984) (finding appellant's arrest for driving under the influence effected by officer "at the station when in the course of reading her rights he advised her she had been arrested" and officer had probable cause to make warrantless arrest); State v. Nelson, No. 04-

6

1546-CR, 2004 WL 2984829, at *2 (Wis. Ct. App. Dec. 28, 2004) (concluding that phrase "'you have been arrested'" on "Informing the Accused form specifically advised [defendant] that he was under arrest" and "was sufficient to meet the arrest requirement" of state's implied consent law).

Thus, although the better practice would have been for the officer to clearly inform the defendant that, in addition to his arrest on the assault charge, he was also being arrested for DUI, we conclude that, under the facts of this case, when the officer read the defendant the first line of the implied consent form, he effectively arrested the defendant for DUI. We, therefore, hold that the trial court did not err in its determination that the implied consent statute applied in this case.

## II.    Miranda and "The Confusion Doctrine"

The defendant next argues that the trial court erred by failing to exclude any evidence obtained after he invoked his Miranda rights. The trial court ruled that, pursuant to State v. Goding, 128 N.H. 267 (1986), "a reading of the ALS form and conducting breath, blood, urine or physical tests are not interrogation for purposes of" Miranda. The court, therefore, concluded that "it was appropriate for the officer to continue with the ALS and Field Sobriety tests despite the fact that the Defendant had invoked his right to counsel."

In Goding, we addressed whether the defendant's post-arrest, pre-Miranda admissions, given in response to implied consent law questioning, should have been suppressed. Goding, 128 N.H. at 273. We held that implied consent law questioning is not "interrogation," which must be preceded by Miranda warnings, and that "voluntary admissions, comments, or explanations spoken in response to implied consent law questioning are admissible as evidence in criminal trials." Id. at 274; see also State v. Lescard, 128 N.H. 495, 496-97 (1986).

The defendant argues that Goding is distinguishable because, in that case, the defendant was questioned about submitting to breathalyzer and blood alcohol testing before he had been advised of his Miranda rights, see Goding, 128 N.H. at 269, while in this case, the defendant was questioned about submitting to testing after he had been advised of, and had invoked, his Miranda rights. This distinction is immaterial. As we recognized in Goding, in the context of an arrest for driving under the influence, "a police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of Miranda." Id. at 274 (quotation omitted); see also State v. Geasley, 619 N.E.2d 1086, 1089-90 (Ohio Ct. App. 1993) ("Police instructions on a state's implied consent law do not fall within [the] definition of 'interrogation.'"); State v. Blouin, 716 A.2d 826, 829-30 (Vt. 1998). This is so because instructing a suspect about the state's implied consent law involves a process that is "highly regulated by State law, and is presented in virtually the

7

same words to all suspects." Goding, 128 N.H. at 274. "It is similar to a police request to submit to fingerprinting or photography." Id. (quotation omitted). A police inquiry about whether a suspect will submit to testing in this context does not become "interrogation" merely because the inquiry is made after the suspect has been advised of, and has invoked, his Miranda rights. Accordingly, the trial court did not err by finding that it was proper for the officer to continue with the ALS and field sobriety tests despite the fact that the defendant had invoked his Miranda rights. See Pennsylvania v. Muniz, 496 U.S. 582, 604-05 (1990) (finding no interrogation for Miranda purposes when officer provided defendant with relevant information about breathalyzer test and implied consent law and asked defendant whether he understood the information and wished to submit to test, notwithstanding that defendant responded by commenting on his state of inebriation).

The defendant maintains, however, that we should adopt the "confusion doctrine," and find that the officer induced confusion by failing to explain to the defendant precisely why he was under arrest and that Miranda rights do not apply to implied consent procedures. Some "jurisdictions apply the 'confusion doctrine' to situations in which a defendant might be misled by the interplay between Miranda rights and the lack of right to counsel under implied consent laws." State v. Reitter, 595 N.W.2d 646, 654 (Wis. 1999); see also State v. Colosimo, No. 13-1066, 2014 Iowa App. LEXIS 946, at *13 (Iowa Ct. App. Oct. 1, 2014) (noting that "confusion doctrine" is "recognized in a minority of states"). "Under the 'confusion doctrine,' a defendant's refusal to submit to a chemical test will be excused if the defendant believed he or she had the right to invoke counsel before taking the test." Reitter, 595 N.W.2d at 654; see also Kurecka v. State, 67 So. 3d 1052, 1056 (Fla. Dist. Ct. App. 2010) (explaining that, under "confusion doctrine," "a licensee's refusal to submit to a breath test will be excused if, due to a prior administration of the Miranda warnings, the licensee believes that he or she had the right to consult with counsel prior to taking a breath test" (quotation and brackets omitted)). "A defendant's access to the 'confusion doctrine,' however, is premised on a reading of Miranda rights and a showing that the defendant actually was 'confused.'" Reitter, 595 N.W.2d at 654. Thus,

> [s]ome jurisdictions have held that when a motorist is confused by the two warnings concerning assistance of counsel — one warning (Miranda) according the assistance of counsel, the other (breath test refusal) not according assistance of counsel — and then refuses to take the breath test in the mistaken belief that the refusal is privileged, the motorist should not suffer the consequences of confusion and not be penalized for the refusal.

State v. Leavitt, 527 A.2d 403, 406 (N.J. 1987) (citing cases); see also Kurecka, 67 So. 3d at 1056-57.

8

Here, the defendant did not refuse to submit to either the field sobriety tests or the breath test. Nor does he allege that he was confused as to his entitlement to counsel before taking the tests. This is not the situation that the "confusion doctrine" contemplates. See Kurecka, 67 So. 3d at 1056-57; Leavitt, 527 A.2d at 406; Reitter, 595 N.W.2d at 654. We, therefore, decline the defendant's invitation to adopt the "confusion doctrine." See Colosimo, 2014 Iowa App. LEXIS 946, at *18-21 (declining to recognize the "confusion doctrine" and upholding trial court's ruling that there was "no evidence in the record that the Defendant specifically was confused" (quotation omitted)); Leavitt, 527 A.2d at 408 (concluding that "confusion doctrine" could not be asserted by defendant because defendant "was not confused with respect to the exercise of his rights"). Accordingly, we conclude that the trial court did not err in allowing the State to admit the ALS form and the ensuing test results.

Nonetheless, although we decline to adopt the "confusion doctrine" under the circumstances of this case, we note that to avoid potential confusion, it would be better for officers to simply advise suspects that they do not have the right to consult with counsel before deciding whether to consent to testing because the right to consult with an attorney before giving any oral or written statement does not apply in the ALS context. See Leavitt, 527 A.2d at 407; see also Reitter, 595 N.W.2d at 655 ("[W]e see no harm in allowing the officer to state briefly that the right to counsel does not attach to the implied consent setting."). Therefore, we encourage the legislature and the New Hampshire Department of Safety to consider whether to include a provision in the ALS form advising suspects that there is no right to speak with counsel prior to deciding whether to submit to the requested ALS tests. See McKenna v. Com., Dept. of Transp., 72 A.3d 294, 296 n.2 (Pa. Commw. Ct. 2013), appeal denied, 81 A.3d 79 (Pa. 2013); see also Leavitt, 527 A.2d at 407-08.

III. Sufficiency of the Evidence

Finally, the defendant argues that the trial court erred in finding the evidence sufficient to convict him of DUI. To prevail in his challenge to the sufficiency of the evidence, the defendant must demonstrate that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. State v. Belleville, 166 N.H. 58, 61 (2014). In reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation. State v. Kelley, 159 N.H. 449, 455 (2009). Circumstantial evidence may be sufficient to support a finding of guilt beyond a reasonable doubt. Id. Further, the trier of fact may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom. Id. When the evidence as to one or more of the elements of the charged offense is solely circumstantial, it must exclude all reasonable conclusions except guilt. Belleville, 166 N.H. at 62. Because a challenge to the sufficiency of the evidence raises a claim of

9

legal error, our standard of review is de novo. State v. Collyns, 166 N.H. 514, 517 (2014).

To convict the defendant of DUI, the State was required to prove beyond a reasonable doubt that the defendant drove or attempted to "drive a vehicle upon any way" while he was "under the influence of intoxicating liquor." RSA 265-A:2, I. To prove that the defendant was "'under the influence of intoxicating liquor,'" the State needed only to prove beyond a reasonable doubt that the defendant was impaired to any degree. Kelley, 159 N.H. at 452.

The defendant argues that the evidence was insufficient to prove that he drove a vehicle, in part, because the officer "had no personal knowledge of [his] driving." He further contends that, even if the State could prove that he drove a vehicle, there was insufficient evidence that he was under the influence when he did so because the officer "had no knowledge of [his] state of sobriety at the time he was allegedly operating the vehicle" because the officer did not know "the temporal framework" and did not know whether the defendant had anything to drink after he returned to the bar.

Viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found it sufficient to establish that the defendant drove a vehicle while under the influence of intoxicating liquor. The bouncer testified that he observed the defendant drive into the parking lot and described the sequence of events that occurred thereafter. He stated that he saw the defendant emerge from the driver's side of the vehicle and get "into an altercation with another" man. Because neither the defendant nor the other man would back down from the altercation, the bouncer went to the officer for assistance. The bouncer testified that he could smell alcohol on the defendant.

The officer testified as to what happened after he encountered the defendant. He stated that he approached the men and brought the defendant back to his cruiser. He testified that he noticed that the defendant's "eyes were bloodshot and red." He also noticed a "distinctive odor of alcohol coming from [the defendant's] breath," and that the defendant "was having trouble with his balance." The officer testified that the defendant was "pulling away from" the officer and, "in doing so he was stumbling a bit," and the officer had to "hold onto [the defendant] to keep him from falling." After the officer arrested the defendant, he "detected a distinct odor of alcohol" in the cruiser that had not been there before he placed the defendant in the cruiser. Significantly, at some point after the officer arrested the defendant for simple assault, but prior to transporting him to the police station, the bouncer told the officer that he had observed the defendant drive into the parking lot.

In light of this testimony, the trier of fact could reasonably have inferred that there was a continuous sequence of events from when the bouncer saw the defendant drive into the parking lot to when the officer observed signs of

intoxication. Although the officer did not personally observe the defendant driving, the circumstances under which he later observed the defendant, along with the bouncer's testimony, establish that the trial court could have found, beyond a reasonable doubt, that the defendant drove while under the influence of intoxicating liquor. Cf. State v. Hanger, 491 N.W.2d 55, 58 (Neb. 1992) (concluding circumstantial evidence sufficient to convict defendant of operating a motor vehicle while his license was suspended even though officer did not observe defendant driving). Furthermore, at the police station, the defendant admitted to being drunk, he failed the HGN and walk-and-turn tests, and the results of the breath test revealed that he had a blood alcohol level of 0.17. Accordingly, we conclude that the trial court did not err by finding the evidence sufficient to convict the defendant of DUI.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.