NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2015-0570


THE STATE OF NEW HAMPSHIRE

v.

REMI GROSS-SANTOS

Argued: October 13, 2016
Opinion Issued: January 31, 2017


Joseph A. Foster, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.


David M. Rothstein, deputy director public defender, of Concord, on the brief and orally, for the defendant.


CONBOY, J. The defendant, Remi Gross-Santos, appeals his convictions on two counts of second degree assault and one charge of transportation of alcoholic beverages by a minor. See RSA 631:2, I(a) (2016); RSA 265-A:45 (2014). He argues that the Trial Court (Delker, J.) erred in: (1) allowing the State to introduce evidence that there was a marijuana grinder in the back seat of his vehicle at the time of the accident (grinder evidence); and (2) ruling that the police had probable cause to arrest him. We affirm.

We recite here a summary of the record evidence. We note that the issues raised by the defendant address two rulings made by the trial court, one after a suppression hearing and the other at trial. This summary of the evidence is drawn from the trial record.

The defendant was scheduled to graduate from Portsmouth High School on June 13, 2014. He made plans with his friends to attend a graduation party in Ipswich, Massachusetts on June 11. On that day, he met a friend, (hereinafter "the passenger"), at Portsmouth High School at approximately 9 p.m. The passenger testified that while they waited for another friend to finish working, they smoked marijuana. They then picked up their friend and drove to the party. The defendant drank alcohol at the party and went to sleep at approximately 4 a.m. on June 12. When he woke at 6:30 a.m., he and the passenger began to drive back to Portsmouth for an early morning graduation rehearsal. The passenger fell asleep almost immediately and did not wake up until he heard a loud noise. The defendant told one of the investigating officers that he "was having trouble staying awake and [was] nodding on and off."

A motorist driving directly behind the defendant observed the defendant's vehicle veer left, cross a lane of traffic, and enter the pedestrian walkway where it struck and severely injured two women who were walking north in the walkway. When the passenger asked the defendant what had happened, the defendant told him that "he hit them."

Police and medical personnel arrived at the scene of the accident. In the course of the investigation, the defendant spoke to three police officers. He told the first officer, Patton, that he was coming from an all-night party in Ipswich. He then spoke to Lieutenant Gidley and told him that he was driving back from Seabrook and that he had had two beers around midnight. At Gidley's direction, the defendant was arrested for driving under the influence (DUI), see RSA 265-A:2, I (2014); and Patton then transported him to the hospital for a blood test.

At the hospital, the defendant was interviewed by Detective Buczek. Buczek testified that the defendant gave him a chronology of his activities during the 24-hour period leading up to the accident. As part of the chronology, the defendant told Buczek that, early in the afternoon before the party, while at home, he had "smoked some marijuana out of a glass pipe." Buczek also testified that the defendant told him that, at the party, he drank five to seven beers between 10:30 p.m. and approximately 3:30 a.m. on the morning of the accident. The officers obtained a warrant to search the defendant's vehicle, in which they found several items, including a marijuana grinder.

Prior to trial, the defendant filed a motion to suppress all evidence derived from his arrest arguing that the police lacked probable cause to arrest

2

him.  After a hearing, the trial court ruled that the officers had probable cause to arrest him for violating the per se alcohol concentration limit set forth in RSA 265-A:2, I(b).  The defendant also filed a motion in limine seeking to prevent the State "from offering any evidence of prior marijuana use" and to strike the reference to marijuana in the indictments.  In a ruling prior to the commencement of trial, the court stated that "the State would not be able to introduce evidence of the marijuana consumption as substantive evidence that the Defendant was impaired by the marijuana and/or alcohol."  The court found that the defendant's marijuana consumption was irrelevant to impairment because there was no evidence that his consumption "hours before he drove" created a risk that "constitute[d] a gross deviation from the conduct of a law-abiding person."  (Quotation omitted.)

The court also ruled, however, that the State could introduce evidence of the defendant's marijuana consumption "to impeach [his] statement" to the police.  The court reasoned:

> I think the credibility of his statement about how much alcohol he consumed is a very critical issue in this case and how that alcohol affected him, the fact that he did not disclose the marijuana consumption is highly probative in my mind of an understanding that, that is not a favorable fact to his position that he was not under the influence.
>
> In other words, he appears to have made a conscious decision to keep that information from the police or at least a reasonable jury could infer that and, because he knew that, that would hurt his position that he was not operating under the influence. . . .
>
> And I think, from that decision-making process, a reasonable jury could also conclude that he withheld other information from the police, namely, how much he consumed . . . and how that affected him at the time of the crash in this case.

The court also advised the parties that it would "give a very clearly worded jury instruction, limiting instruction about the use of that evidence."  The State then argued that, given the court's reasoning, evidence that the marijuana grinder was found in the back seat of the defendant's vehicle should also be admitted.  The trial court agreed, finding that "the evidence of the grinder is not so much more prejudicial than the marijuana evidence in general and it does have the additional probative value that it helps corroborate [the passenger's] version of this and undermines the Defendant's version of what happened that night."

3

The State's first witness at trial was the passenger.  As he began to testify, the court gave the following instruction:

> Okay.  So ladies and gentlemen, I need to give you some additional instructions at this point.  In cases, sometimes evidence is admissible for one purpose and not for another purpose, so you can consider it for some limited purposes.
>
> And this is an example of that.  In this case, you just heard a moment ago that this witness and the Defendant had smoked marijuana prior to the crash at issue in this case.  There is no allegation or charge in this case before you that the Defendant was under the influence of marijuana at the time of the crash, so you cannot speculate about that or consider that in your deliberations.
>
> The relevance of this testimony is to -- you can consider that testimony simply -- I mean, solely for the limited purpose of evaluating the credibility of statements that the Defendant gave to the police after the crash at issue in this case.  So you're only allowed to consider this testimony as it has bearing in your judgment on the credibility of statements that the Defendant gave to the police after the crash, not for any other purpose.

Following the three-day trial, the defendant was convicted on two counts of second degree assault and on a charge of transporting alcohol as a minor. He was acquitted on two counts of aggravated driving while intoxicated.

On appeal, the defendant first argues that the trial court erred in allowing the State to introduce the grinder evidence.  He "does not challenge the court's decision to admit statements by himself and [the passenger] that [the defendant] smoked marijuana on the day or the night before the accident." He argues, however, that: (1) the grinder evidence had no probative value; and (2) to the extent that the evidence had any probative value, the value was outweighed by its prejudicial impact because "the grinder cast the statements about marijuana use in a different light" by "impl[ying] that he was more than a casual user."

The State contends that the defendant failed to preserve the "specific claims he makes about the admissibility of the grinder evidence."  The State also argues that, to the extent that the defendant challenges admission of the grinder evidence under New Hampshire Rule of Evidence 404(b), he has failed to apply the three-part test applicable to Rule 404(b) challenges and therefore his Rule 404(b) argument is not sufficiently briefed.  See, e.g., State v. Thomas, 168 N.H. 589, 599 (2016) (setting forth three-pronged test applicable to evidence proffered pursuant to Rule 404(b)).  The defendant responds that, his argument is not based upon a violation of Rule 404(b); rather, because the

4

Rule 404(b) test contains a Rule 403 component, see id. at 598-99, he cited Rule 404(b) cases to support his contention that the prejudicial impact of the grinder evidence outweighed any possible relevance. The State also argues that to the extent the trial court erred in admitting the grinder evidence, any error was harmless.

We have often explained that the purpose of our preservation rule is to insure that trial forums have an opportunity to rule on issues and to correct errors before parties seek appellate review. See, e.g., State v. McMinn, 141 N.H. 636, 642 (1997). This requirement is intended to discourage parties who are unhappy with the trial result to comb the record to find an alleged error never raised before the trial judge that might support a motion to set aside the verdict. State v. Noucas, 165 N.H. 146, 152 (2013). With these principles in mind, we have held that an issue is preserved when the trial court understood and therefore addressed the substance of an objection. See State v. King, 136 N.H. 674, 677 (1993). Here, the analysis articulated by the trial court demonstrates that it understood and addressed the defendant's objection to the admission of the grinder evidence. The defendant presents this same challenge on appeal. We conclude, therefore, that the defendant's argument is preserved.

Accordingly, we turn to the merits of the defendant's argument. We review challenges to the trial court's evidentiary rulings to determine whether the rulings are sustainable and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case. State v. Tabaldi, 165 N.H. 306, 321 (2013). In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made. Id. The defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id.

Although the grinder evidence was arguably relevant to support the passenger's testimony that he and the defendant had smoked marijuana in the defendant's car on the night prior to the accident, we will assume without deciding that its probative value was substantially outweighed by the danger of unfair prejudice, and therefore the grinder evidence should not have been admitted. See N.H. R. Ev. 403. We agree with the State, however, that the error was harmless.

The State bears the burden of establishing that an error is harmless. State v. Palermo, 168 N.H. 387, 398 (2015). To satisfy this burden, the State must demonstrate, beyond a reasonable doubt, that the error did not affect the verdict. Id. An error may be harmless if the other evidence of the defendant's guilt was of an overwhelming nature, quantity or weight and if the inadmissible evidence was merely cumulative or inconsequential in relation to the State's evidence of guilt. Id. In determining whether the error was harmless, we

5

consider the other evidence presented at trial as well as the character of the inadmissible evidence. Id.

The defendant argues that "the grinder evidence not only raised the profile of the marijuana evidence, making it more likely that the jury would believe that he was impaired, but implied that he had a propensity to use the drug." We are not persuaded by this argument. At the time that the State sought to admit the grinder evidence, the trial court reminded the jury of the limiting instruction that it had given the previous day:

> Okay. So, ladies and gentlemen, I'm just going to remind you. As I told you yesterday, the evidence with respect to this that you just heard about, there is no allegation in this case that the Defendant was operating under the influence of marijuana. So you cannot consider the evidence for that purpose. The reason I'm allowing you to consider this evidence is to evaluate statements that the Defendant -- to evaluate the credibility of statements that the Defendant gave to the police as well as to evaluate [the passenger's] testimony in this case.

See, e.g., State v. Cooper, 168 N.H. 161, 171 (2015) (juries are presumed to follow instructions).

The defendant was charged, inter alia, with two counts of second degree assault. See RSA 631:2, I(a). Accordingly, the State was required to prove beyond a reasonable doubt that he "knowingly or recklessly caused serious bodily injury to another." Id. Notwithstanding the grinder evidence, the evidence before the jury showed that in less than twenty-four hours before the defendant hit two pedestrians while driving: (1) he smoked marijuana both at home and later in the car with the passenger before heading to an all-night party; (2) he consumed alcohol at the party, and made inconsistent statements about how much alcohol he consumed and when he consumed it; (3) he slept approximately two and one-half hours before getting back into his car early in the morning to drive from Ipswich, Massachusetts to Portsmouth, New Hampshire; and (4) he continued driving despite "nodding" off several times.

Given the overwhelming nature of the other evidence of the defendant's guilt of the charged offenses, and the cumulative and inconsequential nature of the grinder evidence, in light of the other testimony concerning marijuana consumption, we conclude beyond a reasonable doubt that the grinder evidence did not affect the verdict. To the extent that the defendant also argues that admission of the grinder evidence requires that we reverse his conviction for transporting alcohol as a minor, we similarly conclude that its admission did not affect the verdict on this charge. See RSA 265-A:45. Accordingly, to the extent that the trial court may have erred in admitting the grinder evidence, any error was harmless. See Palermo, 168 N.H. at 398.

6

The defendant also contends that the trial court erred in ruling that the police had probable cause to arrest him. Specifically, he argues that, in making its probable cause determination, the trial court "failed to limit its review of the circumstances to those facts known to [the arresting officer], Gidley." The State contends that this issue is not preserved because, although the defendant challenges certain findings contained in the trial court's order, he did not alert the court to these specific claims of error by filing a motion to reconsider. The State also argues that, even if Gidley lacked probable cause to arrest the defendant for DUI, he had probable cause to arrest him for vehicular assault. The defendant contends that the State's "alternative grounds" argument is not preserved.

We will assume, without deciding, that the defendant has preserved his challenge to the specified factual findings of the trial court. Having reviewed the record of the suppression hearing, we conclude that it supports the court's ruling that the police had probable cause to arrest the defendant for DUI.

The defendant challenges the trial court's probable cause ruling under the Federal Constitution. See, e.g., State v. Dellorfano, 128 N.H. 628, 632-33 (1986). We will affirm a trial court's determination of probable cause unless, when the evidence is viewed in the light most favorable to the State, the decision is contrary to the manifest weight of the evidence. State v. Ducharme, 167 N.H. 606, 611 (2015). In reviewing its decision, we accept the trial court's findings unless they lack support in the record or are clearly erroneous; we review the trial court's legal conclusions de novo. State v. Lantagne, 165 N.H. 774, 776 (2013).

The United States Supreme Court has held that "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Id. The arresting officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." Id. at 153.

In determining whether the officer had probable cause, we review reasonable probabilities and not the amount of evidence required to sustain a conviction or to make out a prima facie case. Ducharme, 167 N.H. at 611. We do not view each item of evidence separately, but rather as a whole, and from the arresting officer's point of view at the time the arrest was made. Id. We limit our review of the trial court's probable cause ruling to the facts presented at the suppression hearing.

7

The defendant was arrested for violating RSA 265-A:2, I, which provides:

I. No person shall drive or attempt to drive a vehicle upon any way or operate or attempt to operate an OHRV:

(a) While such person is under the influence of intoxicating liquor or any controlled drug, prescription drug, over-the-counter drug, or any other chemical substance, natural or synthetic, which impairs a person's ability to drive or any combination of intoxicating liquor and controlled drugs, prescription drugs, over-the-counter drugs, or any other chemical substances, natural or synthetic, which impair a person's ability to drive; or

(b) While such person has an alcohol concentration of 0.08 or more or in the case of a person under the age of 21, 0.02 or more.

Under the first variant of DUI, a person is guilty if he or she drives a vehicle upon a way while "under the influence of intoxicating liquor . . . which impairs a person's ability to drive," RSA 265-A:2, I(a); see State v. Ducharme, 167 N.H. at 617 (holding that to prove that defendant was "under the influence of intoxicating liquor," State needed to prove beyond reasonable doubt only that defendant was impaired to any degree (emphasis added)). Under the second variant, a person is guilty of DUI if the person drives with an alcohol concentration of 0.08 or more, or if under the age of 21, an alcohol concentration of 0.02 or more. See RSA 265-A:2, I(b).

At the suppression hearing, the State argued that under either variant, Gidley had probable cause to arrest the defendant for DUI. As to the first variant, the State argued that there was sufficient evidence for Gidley to conclude that the defendant "was impaired to any degree." We agree.

In determining that probable cause existed, the court cited Gidley's detection of a "slight" odor of alcohol and his observation that the defendant's eyes were glassy. The record establishes that before Gidley spoke to the defendant at the scene, Gidley had already interviewed an eyewitness who reported that the defendant's car left the northbound lane, crossed the southbound lane, and then went over the fog line before hitting the victims, and that it was "[a]lmost like the car was aiming for [them]." Gidley had also observed the defendant's vehicle facing northbound but straddling the southbound lane and the fog line, and he saw two pedestrians lying on the ground. The defendant also told Gidley that he had been on an overnight camping trip and that he had had two beers to drink at about midnight.

The defendant argues that the record does not support findings by the court that Gidley knew, at the time that he decided to arrest the defendant,

that: (1) the defendant had consumed alcohol at an all-night party; and (2) although he told Gidley that he had been camping in Seabrook, he had previously told another officer that he had been coming from a party in Ipswich. Even if we assume, without deciding, that the record, viewed in the light most favorable to the State, does not support these peripheral findings, we conclude that the record evidence establishes that Gidley had probable cause to arrest the defendant for DUI.

Accordingly, we affirm the defendant's convictions.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.