# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2021-0002, <u>State of New Hampshire v. Bernard Halligan</u>, the court on December 9, 2021, issued the following order:**

Having considered the briefs, memorandum of law, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  The defendant, Bernard Halligan, appeals his conviction, following a bench trial (<u>Alfano</u>, J.), for driving under the influence of intoxicating liquor or any controlled drug or any combination of intoxicating liquor and controlled drug, which impaired his ability to drive.[1]  <u>See</u> RSA 265-A:2, I(a) (2014).  He challenges the sufficiency of the evidence.  We affirm.

The record contains the following evidence.  On July 30, 2019, at 6:45 p.m., Sergeant Grealy of the New Hampshire State Police observed the defendant's vehicle stopped, facing south, on a northbound on-ramp to Interstate 93.  Grealy directed the defendant to move his car from the on-ramp and onto the side of an adjoining road.  When Grealy asked the defendant how he had ended up facing the wrong way on the ramp, he did not directly answer the question but instead responded "Sorry."  As she continued to interact with him, Grealy observed that the defendant's speech was slurred, his eyes were "bloodshot and glassy or watery" and that he could not explain how he had come to be parked on the on-ramp.

As patrol supervisor, Grealy could not become involved in lengthy traffic stops, so she called Trooper Patterson to continue contact with the defendant.  As Patterson attempted to continue questioning the defendant, Patterson found that he had to ask questions several times before he received an answer that he could understand because the defendant was muttering and "occupied with touching and looking at the dashboard GPS system."  Patterson also "smelled the distinct odor of a consumed alcoholic beverage emanating from within the vehicle."  Because Patterson believed that the defendant was impaired, he asked him to perform field sobriety tests.  When he asked the defendant about any possible issues before the defendant took the field sobriety tests, the defendant informed him that he was taking an anti-anxiety medication.  The defendant performed three tests during which he exhibited 17 of the 18 possible clues of impairment.  He declined to take a breathalyzer test.  <u>See</u> RSA 265-A:4 (Supp. 2020) (implied consent law); RSA 265-A:10 (2014) (refusal to submit to test authorized under

---

[1] The defendant "does not contest the violation conviction for driving the wrong direction on the ramp."

implied consent law is admissible in criminal action arising out of act alleged to have been committed while person drove under the influence of intoxicating liquor).  Patterson then placed the defendant under arrest for driving while impaired.

Grealy completed an inventory of the defendant's vehicle during which she photographed a clear plastic cup located in its center console.  It contained a slice of lime and a liquid "that looked like maybe a wine or a wine cooler."

The defendant testified at trial.  He explained that he was returning to his home in Connecticut after he spent four or five hours on a boat on Lake Winnipesaukee that day and drank three or four bottles of a non-alcoholic beer, which he identified as O'Doul's.  He was unable to explain how his vehicle ended up stopped, facing the opposite direction on the on-ramp.  He also testified that he had taken Lunesta, a sleep aid medication, at 10 p.m. on the night before he was stopped.

During trial, the court took judicial notice, to which the defendant acquiesced, that the non-alcoholic beer that the defendant testified he had consumed contained 0.4 percent alcohol, and that federal law required 0.5 percent alcohol content to be considered an alcoholic beverage.  At the conclusion of trial, the court ruled:

> So on the first charge, which is a Class B misdemeanor of DUI impairment, I do find, based on the totality of the circumstances, the State has met its burden of proof, and I do find you guilty.
> I think it's interesting to note the statute says you can be under the influence of just a prescription drug that impairs your ability to drive.  That alone is enough for the conviction.  I find in this case, though, that the combination of the O'Doul's and trazodone -- that by itself explains a lot of what happened here, is that combination.
> And I think there may be a misunderstanding.  I can't believe that you can drink three or four O'Doul's and not know that there's alcohol in it because there is significant alcohol in it.  It's just less than a regular beer.  So I do find you guilty of that.
> And I also take note that you refused to take the breathalyzer at the station.  I am not holding it against you to not take the one on the roadside against you at all.  That one is, in my view, probably not reliable, but the one at the station would be.

Discussion about sentencing and the effective date of the defendant's license suspension ensued.   This appeal followed.

2

RSA 265-A:2, I(a) provides that "[n]o person shall drive . . . a vehicle upon any way . . . [w]hile such person is under the influence of intoxicating liquor or any controlled drug, prescription drug, over-the-counter drug, or any other chemical substance, natural or synthetic, which impairs a person's ability to drive or any combination of intoxicating liquor and controlled drugs, prescription drugs, over-the-counter drugs, or any other chemical substances, natural or synthetic, which impair a person's ability to drive." To prove that the defendant was "under the influence" of an intoxicating liquor or drug or combination thereof, the State need only prove that he was "impaired to any degree." State v. Kelley, 159 N.H. 449, 452 (2009) (quotation omitted).

A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo. State v. Morrill, 169 N.H. 709, 718 (2017). To prevail upon his challenge, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. Id. We examine each evidentiary item in the context of all the evidence, not in isolation. Id.

The defendant advances several arguments in his challenge to the sufficiency of the evidence. He argues that non-alcoholic beer is not an intoxicating liquor. He also contends that the State presented insufficient evidence of impairment by: (1) alcohol; (2) a combination of O'Doul's and prescription trazadone; and (3) trazodone alone. He asserts that rather than being impaired by any substance, he was disoriented due to medical conditions and unfamiliar territory. The State contends that none of these issues were raised before the trial court and that they are therefore not preserved for appellate review. See State v. Gross-Santos, 169 N.H. 593, 598 (2017) (purpose of preservation rule is insure trial courts have opportunity to rule on issues and to correct errors before parties seek appellate review).

The defendant first argues that non-alcoholic beer is not an intoxicating liquor and that it is "not reasonably possible to get intoxicated by drinking O'Doul's." This is not an issue that he raised before the trial court. We need not determine in this case, however, whether a driver can be convicted of driving while under the influence of an intoxicating liquor based only upon consumption of a non-alcoholic beer. Here, the trial court ruled that the defendant's combined consumption of non-alcoholic beer and trazodone caused his impairment.

The evidence before the trial court included testimony by Trooper Patterson that, when Patterson asked him about any possible issues before the defendant took the field sobriety tests, the defendant informed him that he was taking an anti-anxiety medication. The court also heard testimony from an expert retained by the defendant. The expert testified that: (1) he had reviewed medical records provided by the defendant; (2) the records indicated that the defendant had been prescribed trazodone, an anti-anxiety medication, prior to the July motor vehicle

stop; and (3) a patient taking either trazodone or Lunesta should not consume alcohol.

Evidence of actual impairment included not only observations by two officers about the defendant's physical appearance, including bloodshot eyes and slurred speech, but also that the defendant: (1) admitted that he had consumed three or four non-alcoholic beverages prior to being stopped; and (2) agreed to perform field sobriety tests, during which he exhibited 17 of 18 possible indicators of impairment. Viewing all of the evidence and all reasonable inferences drawn from it in the light most favorable to the State, we conclude that it was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of DUI.

<u>Affirmed</u>.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**

4