# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0082, <u>State of New Hampshire v. Mesfen Rowell</u>, the court on June 17, 2022, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The defendant, Mesfen Rowell, challenges his conviction, following a jury trial, of being an armed career criminal. <u>See</u> RSA 159-3:a (Supp. 2021). He argues that the Trial Court (<u>Messer</u>, J.) erred by denying his motion to suppress and when instructing the jury. We affirm.

The record of the suppression hearing includes the following evidence. On January 9, 2019, the Manchester Police Department Crimeline received a tip that "two males with street names of Mes and Killer" were responsible for recent robberies in the Manchester area and that they were "known to hang out in the Eastern Avenue area." A department-wide email was then issued. On January 11, 2019, another call was placed to the Crimeline in which the caller reported that the two suspects in the robberies were currently in a bungalow outside of 255 Lake Ave. in the alley between Spruce and Lake.

Officer Ward responded to the tip and after searching unsuccessfully in his cruiser "for anyone who might have information," he continued his search on foot. While he was on foot, an individual approached him; it appeared to Ward that the individual "wanted to talk to [him] about what was going on." The individual stated that he was the person who had called the Crimeline. He reported that the two males were inside his residence, were known as Killer and Mes, and were each armed. He further reported that "one of them was going around bragging about robbing various markets throughout the city" and that they "were talking about going to rob [another market]." He reported that one of them was wearing a red sweatshirt and the other was wearing a dark-colored jacket. As Ward received the information, he radioed it to other units in the area.

Officer DeJoy was in the area, patrolling in an unmarked car. He had already observed the two men. He recognized Killer, who had distinctive tattoos on his face and neck and who had had contact with the Manchester Police Department on at least 50 related incidents. DeJoy called the dispatch desk to see whether Killer had any outstanding warrants. During this call, he was contacted by Sergeant Jajuga, who was also responding to the Crimeline tip. Jajuga shared the information reported by Ward.

Jajuga, with other officers, conducted a pedestrian stop of both men. When DeJoy arrived, he observed both men assuming a prone position. DeJoy placed the defendant in handcuffs and advised him that he was being detained

and that he was not being arrested. He then asked the defendant whether he had any weapons "on him." After DeJoy asked again, the defendant admitted that he was carrying a firearm and DeJoy removed it. The defendant told DeJoy that he was a convicted felon. DeJoy confirmed this with dispatch and then placed the defendant under arrest.

The defendant was indicted on an armed career criminal charge. He subsequently filed a motion to suppress, arguing that the police lacked reasonable suspicion to stop him as he walked down the street and that any evidence seized as a result of the illegal detention should be suppressed. The trial court denied the motion, finding that when the officers seized the defendant, they "were acting upon information provided by . . . a known informant."

Prior to trial, the defendant filed a motion requesting the court "to instruct the jury regarding the minimum mandatory ten to forty-year prison sentence that [the defendant] shall receive if convicted." He argued that "because the Court has no discretion in sentencing if [he] is convicted, the jurors apply the sentence blindly without understanding the ramifications of their decision." The trial court ruled: "For the reasons stated on the record, the motion is denied." The defendant renewed his request following witness testimony. The trial court denied the request and, after the parties completed closing arguments, instructed the jury, in part, that: "The duty of imposing sentence is solely for the judge."

The defendant was convicted on the charge of armed career criminal and this appeal followed.

We first address the defendant's challenge to the trial court ruling on his motion to suppress. When reviewing a trial court's ruling on a motion to suppress, we accept the trial court's factual findings unless they lack support in the record or are clearly erroneous; we review its legal conclusions de novo. State v. Davis, 174 N.H. 596, 600 (2021). The defendant has invoked both the State and Federal Constitutions in his challenge to the trial court's ruling. We first address his claim under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

To undertake an investigatory stop, a police officer must have reasonable suspicion – based upon specific, articulable facts taken together with rational inferences from those facts – that the particular person stopped has been, is, or is about to be, engaged in criminal activity. State v. Wallace, 146 N.H. 146, 148 (2001). The defendant argues that the trial court erred by concluding that the informant was not anonymous and also by failing to examine his credibility.

Our examination of the record provides support for the trial court's finding that the informant was not anonymous. Ward provided the following testimony

at the suppression hearing:

> [OFFICER WARD]: I went to the area, you know, drove around the area looking to see if there was anybody who might have any information, and then -- then I was on foot, at one point. And at that time, a subject approached me, appeared that he wanted to talk to me about what was going on. So I spoke with him. I patted him down at first, just because it was (indiscernible) when I was outside. Like, it -- I was in the area, and he kind of approached me, and then he stated that he was actually the one that called the CrimeLine.
>
> [STATE]: Did you have any idea who the person who called the CrimeLine was until that point?
>
> [OFFICER WARD]: No, sir.

When asked on cross-examination whether the individual had given Ward his name, Ward confirmed that he had provided his name but that Ward had been instructed not to include the name in his report.

The defendant also contends that the presumption of credibility that applies to information provided by victims and eyewitnesses does not extend to information provided by an informant. The State contends that the defendant never argued in the trial court that this distinction was relevant to the presumption of credibility. See, e.g., State v. Gross-Santos, 169 N.H. 593, 598 (2017) (purpose of preservation rule is to insure trial courts have opportunity to rule on issues and to correct alleged errors before parties seek appellate review). We have reviewed the record of the suppression hearing and agree with the State. Accordingly, the defendant's challenge to the trial court's ruling on his motion to suppress must fail.

The defendant also contends that the trial court erred when it instructed the jury as follows:

> Possible punishment [is] not relevant. The possible punishment the Defendant may receive, if you return a guilty verdict, should not influence your decision. The duty of imposing sentence is solely for the judge. You should base your verdict only on the evidence and the law without considering the possible punishment.

The defendant's specific challenge addresses the trial court's statement that the "duty of imposing sentence is solely for the judge." He concedes that he does not challenge "the trial court's refusal to inform the jury of the mandatory minimum sentence." Rather, he asserts that the trial court's instruction can be read to convey that the indicted offense "does not carry a mandatory minimum."

3

When we review jury instructions, we evaluate allegations of error by interpreting the challenged instructions in their entirety, as a reasonable juror would have understood them. State v. Parry, 174 N.H. 50, 54 (2021). We have long held that a jury should not consider the penalty that a defendant may receive if convicted, see State v. Brown, 132 N. H. 520, 526 (1989). Rather, "the authority to sentence a defendant is vested in the court." State v. Chace, 151 N.H. 310, 313 (2004). Accordingly, the duty to determine a sentence upon conviction falls to the trial court. See Webster's Third New International Dictionary 705 (unabridged ed. 2002) (defining "duty" as "obligatory tasks, conduct, service"). Moreover, although the legislature has established a minimum mandatory sentence of ten years for those convicted of being an armed career criminal, it has also given discretion to trial courts to impose a maximum sentence of "not more than 40 years" and a fine of "not more than $25,000." RSA 159:3-a, II (Supp. 2021).

In this case, the trial court correctly instructed the jury that it should not speculate as to any potential sentence that might be imposed but, rather, "should base your verdict only on the evidence and the law without considering the possible punishment." See State v. Gross-Santos, 169 N.H. 593, 599 (2017) (juries are presumed to follow instructions). Moreover, following his conviction, the trial court sentenced the defendant to a maximum term of 20 years and did not impose a fine. Having reviewed the jury instructions in their entirety, we conclude that the trial court did not err by including the challenged statement in its instructions.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**
